**G & M MOTOR COMPANY, Appellee,**

v.

**Shirley THOMPSON, Appellant.**

**No. 47957.**

Supreme Court of Oklahoma.

July 19, 1977.

Carle & Douthit by John R. Carle, Claremore, Paul R. Hodgson, Tulsa, for appellee.

Ferguson, Fisher & Swank, Inc., by Paul Ferguson and John G. Johnson, W. Rogers Abbott, II and John C. McMurry, Oklahoma City, for appellant.

BERRY, Justice.

The question to be decided has not heretofore been decided in Oklahoma. Specifically, may a trial court impress a constructive trust upon proceeds of life insurance policies where a portion of the premiums were paid with wrongfully obtained funds? We hold sound reason and interest of justice require an affirmative answer.

The facts, for the purpose of deciding this question, are simple. A. Wayne Thompson was an accountant for G & M Motor Company [motor company] from January 1, 1968, until his death on August 2, 1970. During this period decedent embezzled $78,856.45 from motor company; a portion of which was used to pay premiums on various insurance policies insuring the life of decedent. The trial court impressed a constructive trust upon various items of real and personal property and a portion of the insurance proceeds in possession of decedent's surviving wife, Shirley Thompson, and child.

Court of Appeals, Division 1, upon wife's appeal, affirmed trial court's impressment of a constructive trust on the real and personal property, but modified the trust on insurance proceeds. The court, relying on *American National Bank of Okmulgee v. King*, 158 Okl. 278, 13 P.2d 164, said "only that part of the funds that the trial court found was used to pay for the payments of the policies while deceased was employed for appellee . . . together with interest at the rate of 10% per annum from date of judgment . . . until paid" are subject to a constructive trust in favor of motor company.

Motor company, after motion for rehearing was denied, sought certiorari. Appellant concomitantly sought writ of certiorari to review evidence supporting trial court's finding on condition motor company's writ was granted. By order dated January 31, 1977, this Court granted certiorari to both parties; however, upon further consideration appellant's petition for certiorari is denied. Rule 3.16, 12 O.S.Supp. 1976, App. 3

Court of Appeals relied upon *American National Bank of Okmulgee v. King, supra;* however, its reliance is inapposite. In *American National Bank,* decedent King was a bank officer and embezzled a considerable amount from Bank. Upon discovery of his embezzlement, King committed suicide. King's wife and two minor children were beneficiaries on two insurance policies on decedent's life. Bank sought to share in insurance proceeds, but trial court found "all premium money was honestly acquired by the deceased" and denied Bank relief. This Court affirmed saying, "We have examined this entire record. It was incumbent upon the plaintiff, to have any equity at all in the proceeds of the life insurance policy, to establish by a fair preponderance of the evidence that its money had been used in paying some part of the premiums. The lower court found otherwise . . . We cannot say on this evidence that we would have found different from what the lower court did." Thus, there being no Bank money used to pay premiums, *American National Bank* is not authority for the proposition that a constructive trust can be impressed upon proceeds to extent of premiums paid with wrongfully acquired funds.

Notwithstanding no necessity to comment, *American National Bank* offered extensive discussion suggesting the direction the court might take in the future. The Court said:

" . . . [A]ll parties appear to have overlooked the fact that what made the fund here was the death of the insured by the force of a self-directed pistol shot. Prior to that time he had taken out some life insurance based on his own death,

and matured thereby; the proceeds being the subject-matter of controversy here . . . The theory of the plaintiff bank is that if it can establish that the bank's money paid the premiums, it gets the insurance, overlooking the fact that it took the death of King to mature the contract of insurance and create the fund. Applying a term ordinarily used in personal injury cases, the 'proximate cause' of converting the policy into an actual liability was the act of the deceased in firing the shot that caused his death. It also overlooks the fact that the first call upon King's life was a natural call of the wife and minor children, whose claims antedated the claims of the bank. The claim is that the bank is entitled to the proportion of the fund that the amount of premium money, paid with the funds of the bank, bears to the total premiums paid. Had the bank sought to recover the money actually embezzled, a good deal of the testimony dealing in details would have been highly essential. But that was not the theory. The theory was that its money paid the premiums, and therefore it was entitled to the fund derived from the death, though premature and self-inflicted.

\* \* \* \* \* \*

" . . . The proceeds of the Bank's money . . . if any it had in premium payments, went into what is known as the reserve or surrender value, which in policies of two year old age would amount to a very small amount of the premium, increasing relatively as the years increase. Had the plaintiff bank elected to proceed on that theory and had established such a payment, there would have been justice in letting them have the portions of premiums reserved. There would have been justice in letting the bank have out of the fund the money that was taken from the bank to pay the life insurance premiums, as they went along, with legal interest. But beyond that natural justice does not go . . . There were a wife and two minor children dependent on the continuation of

that life for care and protection, the one at the hands of a husband, the others of a father. They scarcely compare, and the cases that have undertaken to hold that in a case of life insurance fund distribution it is purely a matter of premium payment should be few and far between. They would have to disregard that which is ordinarily classed as most valuable and sacred, a valuable consideration of the highest magnitude."

It was, apparently, this language which persuaded the Court of Appeals to limit impressment of a constructive trust upon proceeds of life insurance policies to the extent of premiums paid and interest.

 However, the court's theory in *American National Bank* rests upon an ill-founded assumption; viz., death of the embezzler created the fund. While in a rather narrow sense correct, in fact the terms of the insurance contract created the fund; death of the party insured is merely a condition precedent to insurer's duty to perform. The insurance contract was the result of bargaining between insured and insurer; thus, the fund is a product of the bargain. Clearly, the death of insured is not "proximate cause" of fund creation.

 The proper basis for impressing a constructive trust is to prevent unjust enrichment. Restatement of Restitution § 160, Comment c [1937]. The Restatement of Restitution foresaw that a wrongdoer may exchange misappropriated property for other property; thus, § 202 provides:

"Where a person wrongfully disposes of property of another knowing that the disposition is wrongful and acquires in exchange other property, the other is entitled . . . to enforce . . . a constructive trust of the property so acquired."

The drafters explained § 202 as follows:

"Where a person by the consciously wrongful disposition of the property of another acquires other property, the person whose property is so used is . . . entitled . . . to the property so acquired. If the property so acquired is or becomes more valuable than the property used in acquiring it, the profit thus made by the wrongdoer cannot be retained by him; the person whose property was used in making the profit is entitled to it. The result, it is true, is that the claimant obtains more than the amount of which he was deprived, more than restitution for his loss; he is put in a better position than that in which he would have been if no wrong had been done to him. Nevertheless, since the profit is made from his property, it is just that he should have the profit rather than that the wrongdoer should keep it. It is true that if there had been a loss instead of a profit, the wrongdoer would have had to bear the loss, since the wrongdoer would be personally liable to the claimant for the value of the claimant's property wrongfully used by the wrongdoer. If, however, the wrongdoer were permitted to keep the profit, there would be an incentive to wrongdoing, which is removed if he is compelled to surrender the profit. The rule which compels the wrongdoer to bear any losses and to surrender any profits operates as a deterrent upon the wrongful disposition of the property of others. Accordingly, the person whose property is wrongfully used in acquiring other property can by a proceeding in equity reach the other property and compel the wrongdoer to convey it to him. The wrongdoer holds the property so acquired upon a constructive trust for the claimant."

Thus, it is not necessary for a plaintiff to have suffered any loss or suffer a loss as great as the benefit of defendant. See Id. § 160, Comment d.

 Where the wrongdoer mingles wrongfully and rightfully acquired funds, owner of wrongfully acquired funds is entitled to share proportionately in acquired property to the extent of his involuntary contribution. Id. § 210(2). This principle is specifically applicable to life insurance proceeds where a portion of the premiums were paid with wrongfully acquired money. Id. § 210, Comment a. The drafters said:

". . . Just as the claimant is entitled to enforce a constructive trust upon

property which is wholly the product of his property, so he is entitled to enforce a constructive trust upon property which is the product in part of his own property and in part of the property of the wrong-doer. The difference is that where the property is the product of his property only in part, he is not entitled by enforcing a constructive trust to recover the whole of the property, but only a share in such proportion as the value of his property bore to the value of the mingled fund."

More particularly, § 210, Comment d, Illustration 5 addressed the instant matter. Illustration 5 provides:

"A insures his life for $10,000 and pays the premiums half with money wrongfully taken from B and half with money of his own. A dies. B is entitled to half of the proceeds of the policy . . ."

The record indicates trial court determined extent of premiums paid with wrongfully acquired funds and impressed a constructive trust upon proceeds consistent with Illustration 5.

■ Having carefully considered the matter, we adopt the Restatement view. However, Motor Company has sought no more than the embezzled monies, interest and costs. Further, the surviving wife is an innocent beneficiary. Therefore, we cannot say trial court's judgment is against the clear weight of evidence. We hold Motor Company is entitled to a pro rata share of insurance proceeds, but not to exceed the total amount of embezzled monies, interest and costs.

Appellee granted certiorari. Appellant denied certiorari. Court of Appeals opinion vacated in part. Judgment of trial court affirmed.

LAVENDER, V. C. J., and DAVISON, IRWIN and BARNES, JJ., concur.

HODGES, C. J., and WILLIAMS, SIMMS and DOOLIN, JJ., concur in result.