EBEL, Circuit Judge.
This bankruptcy case involves appeals and a cross-appeal from three orders of the United States District Court for the Western District of Oklahoma. Appellants are a group of banks that made loans to the debtor, Seneca Oil Company. Appellee is the Department of Energy (“the DOE”), which is seeking recovery of overcharges made by Seneca on its sales of crude oil in violation of federal pricing regulations.
*1448 Appellants raise the following issues on appeal: (1) Has the DOE established sufficient wrongdoing by Seneca to justify imposition of a constructive trust under Oklahoma law? (2) Has the DOE sufficiently traced the funds in dispute? (3) Does this court have jurisdiction to decide whether the DOE’s claim is a “fine, penalty, or forfeiture” under the Bankruptcy Code, or does exclusive jurisdiction rest with the Temporary Emergency Court of Appeals? (4) Is the DOE’s claim a “fine, penalty, or forfeiture” under Section 726(a)(4) of thé Bankruptcy Code?
In a cross-appeal, the DOE raises the issue of whether the constructive trust fund should be increased by $54,690.09 because of improper expenditures from that fund.
FACTS
To cope with increasing inflation, Congress in 1970 enacted the Economic Stabilization Act (“ESA”), 12 U.S.C. § 1904 note, which authorized the President “to issue such orders and regulations as he deems appropriate ... to ... stabilize prices.” Economic Stabilization Act of 1970, Pub.L. No. 91-379, § 202, 84 Stat. 799, 799 (1970), as amended by Economic Stabilization Act Amendments of 1971, Pub.L. No. 92-210, § 203(a), 85 Stat. 743, 744 (1971). In November 1973, after the OPEC (“Organization of Petroleum Exporting Countries”) oil embargo was declared, Congress passed the Emergency Petroleum Allocation Act (“EPAA”), 15 U.S.C. § 751 et seq., which authorized the President to establish regulations for the pricing and allocation of crude oil and petroleum products. The regulations promulgated pursuant to the EPAA that are relevant here are the Mandatory Price and Allocation Regulations, which included price ceilings for the sale of crude oil. Those regulations are enforced by the DOE.[1] The oil price controls relevant here were discontinued by the President in 1981, although enforcement actions for past violations continue under a savings clause, 15 U.S.C. § 767.
During the time in which the Mandatory Price and Allocation Regulations were in effect, Seneca Oil Company was an independent producer of crude oil and natural gas operating primarily in Oklahoma. In 1977 and 1978, Seneca conducted test drilling on five oil and gas properties in Oklahoma. Seneca sold the “test oil” that it recovered from those wells.
In May 1979, the DOE issued regulations (“the May regulations”) exempting “newly discovered crude oil” from price ceiling regulations. 10 C.F.R. § 212.79, 44 Fed.Reg. 25,828, 25,832 (1979) (revoked effective March 30, 1981, 46 Fed.Reg. 20,508, 20,516 (1981)). The May regulations defined newly discovered crude oil as crude oil “produced ... from a property from which no crude oil was produced in calendar year 1978.” 10 C.F.R. § 212.79(b), 44 Fed.Reg. 25,828, 25,832 (1979) (revoked effective March 30, 1981, 46 Fed.Reg. 20,508, 20,516 (1981)). Seneca, allegedly believing that the word “produced” in the May regulations meant “produced in commercial quantities,” disregarded its 1978 “test” production on the five properties and certified that the oil produced from those properties after 1978 was “newly discovered crude.” Accordingly, Seneca charged the market price for that oil from November 1979 to December 1980. During that period, Seneca set aside, in an interest-bearing suspense account, a portion of its revenues equal to the difference between the market price it charged and the regulated ceiling price.[2]
In July 1980, the Office of General Counsel of the DOE issued Interpretive Ruling *1449 1980-3, stating that the word “produced” in the May regulations meant produced in any quantity during 1978.[3] In February 1981, Seneca sought injunctive and declaratory relief against the enforcement of Ruling 1980-3 in the United States District Court for the Western District of Oklahoma. It prevailed in the district court. That court held that the DOE’s interpretation in Ruling 1980-3 of the term “produced” was invalid, largely relying upon the preamble to the May regulations.[4] But on appeal the Temporary Emergency Court of Appeals (“the TECA”) reversed the district court, holding that the DOE’s interpretation of the pricing regulations was valid and that Seneca had violated the pricing regulations by miscertifying its crude oil and by overcharging for oil. Seneca Oil Co. v. Department of Energy, 712 F.2d 1384 (Temp.Emer.Ct.App.1983). The TECA remanded to the district court “to grant motions for appropriate orders to secure recovery from [Seneca] of the overcharges in violation of Ruling 1980-3 and the May 2, 1979 legislative regulation, interest thereon and costs.” Id. at 1402.
On March 8, 1985, before judgment was entered in favor of the DOE, Seneca filed for bankruptcy under Chapter 11 of the Bankruptcy Code. The district court entered a final judgment against Seneca on July 3, 1985 for $1,741,597.77 — the amount of the overcharges plus interest up to the date of bankruptcy. The DOE then filed a proof of claim for that amount. It also asserted that it had a constructive trust or equitable lien over the amount of Seneca’s contingency fund as of the date of bankruptcy (approximately $1.3 million).[5] The bankruptcy court held that the DOE had not established sufficient wrongdoing by Seneca to warrant imposition of a constructive trust.[6] The district court reversed and remanded for a determination of whether the DOE had sufficiently traced the funds. In re Seneca Oil Co., 76 B.R. 810 (W.D.Okla.1985).[7] On remand, the bankruptcy court found that the DOE had sufficiently traced the funds, and the district court affirmed that finding.
The bankruptcy court approved a plan of reorganization on November 21, 1985, over the DOE’s objections. The DOE appealed to the district court, arguing that (1) the plan improperly subordinated the portion of the DOE’s claim not covered by a constructive trust below the claims of unsecured creditors, labeling that portion of the DOE’s claim as a fine, penalty, or forfeiture, and (2) the contingency account that the DOE asserted a constructive trust over was deficient by almost $55,000 because the bankruptcy court had improperly approved the payment of postpetition administrative fee expenses out of the contingency account. The district court reversed the confirmation of the plan to the extent that it subordinated the unsecured portion of the DOE’s claim as a penalty. But the district court approved the payment of the administrative fees because the constructive trust claim had not yet been granted when the administrative fees were autho *1450 rized.[8]
The appellants here are a group of banks that made secured loans to Seneca (The Bank of New York, Interfirst Bank Dallas, Credit Suisse, United Bank of Denver, and Bank of Oklahoma). Seneca has no interest in this litigation because it has been reorganized and the money in dispute has been set aside in a disputed claim fund for the benefit of Seneca’s creditors.
ANALYSIS
I. CONSTRUCTIVE TRUST
A constructive trust is an equitable remedy that is imposed for the recovery of wrongfully-held property. See In re Heston Oil Co., 63 B.R. 711, 714 (Bankr.N.D.Okla.1986); Cacy v. Cacy, 619 P.2d 200, 202 (Okla.1980). In order to obtain a constructive trust over property of a bankrupt, a party must (1) show either sufficient wrongdoing by the bankrupt in acquiring the property or a fiduciary relationship between the party and the bankrupt, and (2) be able to trace the wrongfully-held property. See 4A Collier on Bankruptcy § 70.25 (14th ed. 1978); see also In re Heston Oil Co., 63 B.R. at 714.
A. Wrongdoing
The district court found a constructive trust here because it concluded that Seneca’s illegal overcharging “clearly and unequivocally shows wrongdoing.” In re Seneca Oil Co., 76 B.R. at 813. Appellants argue that Seneca’s overcharging was not sufficient wrongdoing to warrant a constructive trust. Because this is an issue of law, we apply a de novo standard of review. In re Ruti-Sweetwater, Inc., 836 F.2d 1263, 1266 (10th Cir.1988).
The parties agree that Oklahoma law governs the issue of whether a constructive trust exists in this case. The Supreme Court of Oklahoma has explained the conditions for imposing a constructive trust as follows:
The primary reason for imposing a constructive trust is to avoid unjust enrichment. It is imposed against one who “by fraud, actual or constructive, by [duress] or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either [has] obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.”
Easterling v. Ferris, 651 P.2d 677, 680 (Okla.1982) (quoting Cacy v. Cacy, 619 P.2d at 202) (bracketed words added). Mere “unfairness” in allowing the holder of the property to retain the property is not sufficient to justify imposition of a constructive trust. Easterling, 651 P.2d at 680. There must also be “active wrongdoing” by the person holding the property. Id. The evidence of wrongdoing “must be clear, unequivocal, and decisive beyond a reasonable doubt_ A mere preponderance of the evidence is not sufficient to establish a constructive trust but it must be established by evidence which is clear, definite, unequivocal and satisfactory, or such as to leave but one conclusion, or as to leave no reasonable doubt as to the existence of the trust.” Id. at 681; see also Ohio v. Four Seasons Nursing Centers of America, Inc., 465 F.2d 25, 28 (10th Cir.1972) (observing that the standard for imposing a constructive trust in Oklahoma is rigorous).
Although it is a close issue, we believe that there was sufficient wrongdoing here. The Temporary Emergency Court of Appeals has determined that Seneca overcharged customers for crude oil in violation of federal pricing regulations. Seneca’s overcharging resulted in unjust enrichment to Seneca and its creditors. As noted above, the primary purpose of a constructive trust in Oklahoma is to avoid unjust enrichment. Easterling, 651 P.2d at 680; Cacy, 619 P.2d at 202; see also G & M Motor Co. v. Thompson, 567 P.2d 80, 83 *1451 (Okla.1977). Moreover, Seneca was at all relevant times aware of the pricing regulations. Its creation of a contingency fund is evidence that it was on clear notice that it might be violating those regulations. Therefore, we conclude that Seneca’s behavior constituted sufficient active wrongdoing.[9]
Appellants argue that the existence of actual fraud or a fiduciary relationship is necessary for the imposition of a constructive trust under Oklahoma law. (Appellants’ Consolidated Reply Br. at 6.) We disagree. Although most Oklahoma cases imposing a constructive trust have involved either fraud or a fiduciary relationship, the Oklahoma Supreme Court repeatedly has stated that a constructive trust is proper under other circumstances. See, e.g., Easterling, 651 P.2d at 680 (noting that a “commission of wrong" can be sufficient); Peyton v. McCaslin, 417 P.2d 316, 320 (Okla.1966) (“Constructive trusts are such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired without fraud, it is against equity that it should be retained by him who holds it.” (emphasis added)); Goldsby v. Juricek, 403 P.2d 454, 458 (Okla.1965) (“A constructive trust ... [is imposed] against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.”); Phillips v. Ball, 358 P.2d 193, 197 (Okla.1960) (“[WJhere a party obtains legal title to property by fraud, violation of confidence, or in any other unconscientious manner, equity will impress a constructive trust on property so obtained for one who in good conscience is entitled to it.”).
Appellants also contend that Seneca’s overcharging is the equivalent of the mere nonpayment of a debt to a creditor, which appellants argue is not the sort of conduct that warrants imposing a constructive trust. We disagree that Seneca’s behavior amounted only to nonpayment of a debt. Seneca violated federal law by overcharging for oil, which is more wrongdoing than the typical creditor-debtor situation.
B. Tracing
Appellants argue that the DOE has failed to trace the funds in dispute. The bankruptcy and district courts found that the DOE had sufficiently traced the funds. Because the conclusions of those courts on the tracing issue are factual findings, we will not reverse them unless they are clearly erroneous. In re Schneider, 864 F.2d 683, 685 (10th Cir.1988).
Both sides agree that the “lowest intervening balance rule” should be applied in this case. That rule provides that when a trustee has commingled trust funds with his own funds, the creditor may recover the lowest balance to which the common fund has been depleted, on the theory that the trustee is presumed to use the trustee’s own money first. See In re Mahan & Rowsey, 817 F.2d at 684; Ayers v. Fay, 187 Okl. 230, 102 P.2d 156, 159 (1940).
Appellants first argue that the DOE has failed to trace the overcharges from the time those funds initially entered the gen *1452 eral account to the time the contingency fund was first established.[10] We agree.
Seneca began depositing overcharges in December 1979 into its general account, but it did not set up the contingency certificate of deposit (the “Suspense CD”) until January 1980. The DOE has not set forth any evidence in the record showing that the amount of the overcharges received during that short period was not depleted before the CD was established. Although we apply a clearly erroneous standard of review to the factual findings of the bankruptcy court, the bankruptcy court did not make any findings regarding depletion from the time the overcharges initially were being received to the time when the Suspense CD was first created. In fact, the district court, upon reviewing the bankruptcy court’s opinion, was able to state only that “it appears possible that the bankruptcy court was able to apply the ‘lowest intervening balance rule.’ ” In re Seneca Oil Co., 76 B.R. 813, 816 (W.D.Okla.1987). Therefore, we remand for a factual finding as to the lowest intervening balance during that period.
Appellants also argue that on three separate occasions the contingency fund was “commingled” with the general account and depleted. First, they argue that the fund was depleted in March 1981. On March 11, the Suspense CD was deposited into Seneca’s general account, and on March 12, a new CD was issued in the same amount as the old CD. When the new CD was purchased, there was an overdraft of $291,793.77. Thus, appellants argue that the contingency fund was depleted by that amount. The DOE responds that the evidence supports a conclusion that the CD was instantaneously “rolled over” by means of a “forced debit.” We agree. The new CD was issued in the same amount as the old CD without regard to the negative balance that existed when the old CD was deposited into the general account. Thus, the amount of the overdraft on March 11 was, as a matter of substance, separate from the rollover of the CD.
The second alleged depletion occurred at the end of June 1983. On June 30, Seneca deposited the CD into its general account. As a result of withdrawals made during that day, the daily balance sheet reflected that the general account was depleted to $260,677.90. Seneca did not establish a new CD until five days later. Appellants argue that the contingency fund was depleted on June 30 to $489,491.58 (the $260,-667.90 left in the general account at the end of the day on June 30 plus the $228,-823.68 that was used to buy commercial paper on that date, see Appellants’ Br. at 26).
The district court disagreed that the fund had been depleted, taking into account a large deposit that was reflected on Seneca’s General Ledger for June 30 but was not reflected on the account balance statement for that day. Although we tend to agree with appellants that the daily balance statement provided by Seneca’s bank was better evidence of the state of Seneca’s general account, see, e.g., Republic Supply Co. v. Richfield Oil Co., 79 F.2d 375, 380 (9th Cir.1935) (“the daily closing balance is the one which reflects the actual state of the ordinary commercial bank account”), we do not believe that it was clearly erroneous for the district court to consider the General Ledger.
The third alleged depletion occurred in February 1985. Appellants first argue that the funds in the CD cannot be traced because the CD was cashed and the funds were commingled with Seneca’s other funds. However, mere commingling of the funds does not defeat tracing. Connecticut Gen. Life Ins. Co. v. Universal Ins. Co., 838 F.2d 612, 619 (1st Cir.1988); In re Mahan & Rowsey, Inc., 817 F.2d at 684. Appellants also argue that the DOE has failed to trace the funds after the date *1453 of bankruptcy. The DOE correctly responds that it was not obligated to trace the funds after the date of bankruptcy. See 4A Collier on Bankruptcy § 70.25[2], at 354 n. 44 (14th ed. 1978) (no duty to trace after initiation of bankruptcy; collecting cases).
C. The DOE’s Cross-Appeal
In a cross-appeal, the DOE argues that the constructive trust fund should be increased by $54,690.09. It contends that the bankruptcy court erroneously approved that amount of expenditures out of the fund for administrative fees. We agree.
As the district court noted, the $54,690.09 was spent before DOE’s constructive trust was approved. 76 B.R. 818. Thus, the district court concluded that it was within the bankruptcy court’s discretion to allow the expenditure of that amount for administrative expenses. See 11 U.S.C. § 503(b)(1)(A) (allows for payment of administrative expenses incurred during bankruptcy after notice and hearing). However, these constructive trust funds were never part of the bankruptcy estate, and therefore could not be used by the trustee to pay administrative expenses. There is some dispute conceptually whether a constructive trust arises at the time of the wrongful act or whether it arises only at the time it is so declared by the court, but then applied retroactively to the time of the wrongful act. Compare V A. Scott, The Law of Trusts § 462.4 (3d ed. 1967) (constructive trust arises at the time of the wrongful act) with G. Bogert, Trusts and Trustees, § 472 (2d ed. rev. 1978) (constructive trust arises only after it is imposed by a court, but after it is imposed, the trust relates back to the time of the wrongful act). However, we need not resolve that dispute because under either theory, the effective date of the constructive trust is the date the wrongful act occurred. The bankruptcy estate expressly does not include any equitable interest in “[pjroperty in which the debtor holds, as of the commencement of the case, only legal title.” 11 U.S.C. § 541(d); see also In re Mahan & Rowsey, Inc., 817 F.2d at 684; cf. Begier v. Internal Revenue Serv., — U.S. -, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) (trust-fund tax payments made from debtor’s general accounts prior to filing bankruptcy petition are not avoidable as preferences because the payments involved trust property, which would not have been part of the bankruptcy estate). Thus, we remand to the district court for an order to have the trust fund reimbursed in the amount of $54,690.09 from whatever source is determined to be most appropriate and in accordance with law.
II. FINE, PENALTY, OR FORFEITURE
The DOE’s claim for recovery of the amount of Seneca’s overcharges arises pursuant to Section 209 of the Economic Stabilization Act, 12 U.S.C. § 1904 note, as incorporated in the Emergency Petroleum Allocation Act of 1973, as amended, 15 U.S.C. § 754(a)(1). Appellants argue that the DOE’s claim is a “fine, penalty, or forfeiture” under Section 726(a)(4) of the Bankruptcy Code and thus should be subordinated below the claims of unsecured creditors. See 11 U.S.C. § 726(a)(4). We note that this argument relates only to the portion of the DOE’s claim that is not governed by the constructive trust because the constructive trust portion is not properly part of the bankruptcy estate and thus is not subject to the priorities set forth in Section 726 of the Bankruptcy Code. See In re Mahan & Rowsey, Inc., 817 F.2d at 684; 11 U.S.C. § 541(a)(1) and (c)(2).
A. Jurisdiction
The DOE has moved to dismiss Appeal No. 87-1890, arguing that this court lacks jurisdiction to decide whether the DOE’s claim is a fine, penalty, or forfeiture because exclusive jurisdiction to decide that issue rests with the Temporary Emergency Court of Appeals. We deny the motion to dismiss.
The TECA has exclusive jurisdiction to decide issues arising under the ESA or the EPAA. Section 211(b)(2) of the ESA, which is incorporated into the EPAA, provides:
*1454 [T]he Temporary Emergency Court of Appeals shall have exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under [the ESA, the EPAA, and] under regulations or orders issued thereunder.
Economic Stabilization Act Amendments of 1971, Pub.L. No. 92-210, § 211(b)(2), 85 Stat. 743, 749 (1971) (incorporated by reference in § 5(a)(1) of the EPAA, 15 U.S.C. § 754(a)(1)). That provision for the TECA’s exclusive jurisdiction was designed to provide for speedy resolution of cases brought under the ESA or EPAA by a court with special expertise, and to ensure consistency of decisions. See Bray v. United States, 423 U.S. 73, 74, 96 S.Ct. 307, 309, 46 L.Ed.2d 215 (1975); S.Rep. No. 92-507, 92d Cong., 1st Sess. 10, reprinted in 1971 U.S.Code Cong. & Admin.News 2283, 2292.
The primary question here is whether the issue before us on appeal is one “arising under” the ESA or EPAA. Several courts have held, and we agree, that the TECA’s “arising under” jurisdiction is a form of “issue jurisdiction,” i.e., the TECA has exclusive jurisdiction over ESA/EPAA issues actually adjudicated by a district court.[11] See, e.g., RJG Cab, Inc. v. Hodel, 797 F.2d 111, 117 (3d Cir.1986) (collecting cases); Coastal States Marketing, Inc. v. New England Petroleum, Corp., 604 F.2d 179, 184-87 (2d Cir.1979). Therefore, in deciding whether the TECA or this court has jurisdiction, we must “conduct a jurisdictional inquiry into each claim raised ... [in this] appeal.” United States v. Wyatt, 680 F.2d 1080, 1085 n. 7 (5th Cir.1982).
An ESA/EPAA issue is one involving the construction, validity, or effect of the ESA or EPAA. Scallop Corp. v. Tully, 705 F.2d 645, 647 (2d Cir.1983); see also Wyatt, 680 F.2d at 1083. “The crucial question is whether the case involves issues that must be decided by TECA in order that ‘uniform interpretation of the substantive provisions of the’ statute may be achieved.” United States v. Uni Oil, Inc., 646 F.2d 946, 951 (5th Cir.1981) (quoting Bray, 423 U.S. at 75, 96 S.Ct. at 309), cert. denied, 455 U.S. 908, 102 S.Ct. 1254, 71 L.Ed.2d 446 (1982).
Here, the DOE sought restitution for the overcharges pursuant to Section 209 of the ESA, which is incorporated in Section 5(a)(1) of the EPAA, 15 U.S.C. § 754(a)(1). But the validity of the pricing and restitution regulations and their application in this case already have been adjudicated before the Temporary Emergency Court of Appeals. See Seneca Oil Co. v. Department of Energy, 712 F.2d 1384 (Temp.Emer.Ct.App.1983). The question before us is whether the restitution claim is a fine, penalty, or forfeiture within the meaning of the Bankruptcy Code. This appeal is not from an action to enforce DOE regulations or to obtain an order of restitution; rather, it is from a decision regarding the priority of the restitution claim in bankruptcy.[12] Although non-bankruptcy law creates the DOE’s claim here, it is bankruptcy law that determines the priority of that claim in bankruptcy. The ESA and EPAA provide only the backdrop for the issue of the priority of the DOE’s claim. Therefore, the issue of the priority of the DOE’s claim is an issue of federal bankruptcy law, not an issue “arising under” the ESA or EPAA. Compare Uni Oil, 646 F.2d at 952 (the defenses raised did not involve interpretation and application of the EPAA; rather, they involved “interpretation of the proper scope of the criminal code statutes under which the defendants were charged”) with Mountain Fuel Supply Co. v. Johnson, 586 F.2d 1375, 1383-84 (10th Cir.1978) (TECA had exclusive jurisdiction where there was no *1455 basis for federal jurisdiction other than the ESA and the appeal involved the validity and the application of the ESA and regulations thereunder), cert. denied, 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1058 (1979) and Coastal States Marketing, 604 F.2d at 187 (where only issue was whether plaintiff had violated EPAA, TECA had exclusive jurisdiction).
The DOE largely relies upon the TECA’s decision in Department of Energy v. West Texas Marketing Corp., 763 F.2d 1411 (Temp.Emer.Ct.App.1985) to support its argument that the TECA has exclusive jurisdiction. In that case, the TECA held that it had exclusive jurisdiction over the same issue as the one raised in the instant appeal, i.e., whether the DOE’s claim for restitution under Section 209 of the ESA is a fine, penalty, or forfeiture under Section 726(a)(4) of the Bankruptcy Code. Because, as discussed above, we believe that the issue of whether a claim is a fine, penalty, or forfeiture under federal bankruptcy law is a bankruptcy rather than an ESA/EPAA question, we disagree with the TECA’s jurisdictional analysis in West Texas Marketing. We conclude that the issue presented in this appeal is not an issue arising under the ESA or EPAA and is instead an issue over which this court, and not the Temporary Emergency Court of Appeals, has jurisdiction.[13]
B. Fine, Penalty, or Forfeiture?
Appellants contend that the DOE’s claim for recovery of the overcharges is a “fine, penalty, or forfeiture” under Section 726(a)(4) of the Bankruptcy Code. We disagree.[14]
We hold that the DOE’s claim is not a fine, penalty, or forfeiture because (1) the claim is based solely on actual pecuniary loss, (2) the purpose of the claim is restitu-tionary rather than penal, and (3) the statutory scheme supports the restitutionary nature of the claim. But cf. Kelly v. Robinson, 479 U.S. 36, 52-53, 107 S.Ct. 353, 362-63, 93 L.Ed.2d 216 (1986) (criminal restitution obligations were a “fine, penalty, or forfeiture” under Section 523(a)(7) of the Bankruptcy Code because (1) criminal restitution is not merely concerned with benefiting victims but also with punishing and rehabilitating the offender, (2) the victim has no control over the amount of restitution, and (3) the amount of restitution is not determined by the severity of the victim’s injury).
First, the claim is based on the exact amount of the pecuniary loss to the overcharged purchasers and, thus, the exact amount of Seneca’s unjust enrichment. Cf. Simonson v. Granquist, 369 U.S. 38, 40, 82 S.Ct. 537, 538, 7 L.Ed.2d 557 (1962) (In Section 57j of the Bankruptcy Act, Congress intended to bar all claims against a bankrupt “except those based on a ‘pecuniary’ loss.”). Appellants argue that in order for the DOE’s claim to be restitutionary rather than penal, the DOE must be seeking to recover for injury to the government. We believe that argument is too restrictive. The language of Section 726(a)(4) does not provide that a claim is a fine, penalty, or forfeiture unless the holder of the claim is seeking recovery for actual loss to the holder. Rather, the language provides that a fine, penalty, or forfeiture will be accorded fourth priority only “to the extent that such fine, penalty, [or] forfeiture ... [is] not compensation for actual pecuniary loss suffered by the holder of such claim.” Thus, the language makes *1456 actual pecuniary loss to the holder of the claim relevant only if a fine, penalty, or forfeiture is involved. That language does not state that if a claim is not for pecuniary loss to the holder of the claim the claim automatically is a fine, penalty, or forfeiture.
Second, although the money that the DOE recovers in this case may not go directly to the overcharged purchasers, the DOE is seeking the money on their behalf. Under the Petroleum Overcharge Distribution and Restitution Act of 1986 (“PO-DRA”), 15 U.S.C. § 4501 et seq., the DOE is obligated to attempt to identify and compensate overcharged purchasers. 15 U.S.C. § 4502(b). Any remaining funds are then to be distributed as “indirect restitution” to states for energy conservation programs and to the Federal treasury. 15 U.S.C. §§ 4502(d), 4503. Clearly, Congress, in enacting the PODRA, envisioned that the DOE’s recovery for overcharges was restitutionary in nature.
Third, the DOE’s claim was brought pursuant to Section 209 of the ESA, which provides that “the court may order restitution of moneys received in violation of any such order or regulation.” (Emphasis added.) Although the label “restitution” should not be conclusive, it is a factor to be considered in determining the nature of the DOE’s claim. Moreover, the relevant regulations contain provisions for civil and criminal penalties, see 15 U.S.C. § 754(a)(3), but the DOE did not seek those penalties in this case.
CONCLUSION
For the foregoing reasons, we AFFIRM the district court’s finding of sufficient wrongdoing to justify a constructive trust. We REMAND for a determination of the lowest intervening balance between the time when the overcharges initially were received by Seneca and the time that Seneca first established the Suspense CD. We REVERSE the judgment against the DOE concerning the $54,690.09 deficiency in the constructive trust fund and REMAND for further proceedings not inconsistent with our opinion. We DENY the DOE’s motion to dismiss Appeal No. 87-1890 for lack of jurisdiction. We AFFIRM the district court’s decision that the DOE’s claim is not a fine, penalty, or forfeiture under Section 726(a)(4) of the Bankruptcy Code. We GRANT DOE’s motion to strike Section II of Appellants’ Second Reply Brief (dated August 15, 1988), but we consider all authorities cited therein as supplemental authorities.

. Normally, Seneca would disburse approximately 90% of the proceeds from its sales of crude oil to royalty and working interest owners. Here, however, Seneca suspended a portion of the disbursements equal to the amount of the difference between the market price it charged and the regulated ceiling price, and it set the money aside in the contingency account, in the form of successive certificates of deposit.

. Shortly thereafter, the DOE amended the May regulations prospectively such that the term “produced” would mean "produced in commercial quantities.”

. The preamble stated that all crude oil produced that would have qualified as newly discovered crude oil under the new reservoir proposal would be entitled to newly discovered crude oil status under the May regulations. The new reservoir proposal had stated that "new reservoir" meant any reservoir where crude oil had not been produced in commercial quantities.

. Although the overcharges plus interest totalled 51,741,597.77 as of the date of bankruptcy, the amount in the contingency fund at that date was only 51,282,706.95 because Seneca had used the difference to pay windfall profit taxes and state severance taxes. Appellants assert a constructive trust only over the amount in the fund at the time of bankruptcy. They assert an unsecured claim over the remaining amount.

. The bankruptcy court also rejected the DOE’s claim of an equitable lien. The DOE has abandoned that theory.

. The district court, when it held that there was sufficient wrongdoing to justify a constructive trust here, also held that the DOE was the statutory trustee for the overcharged purchasers and that Seneca had legal title to the funds in dispute. In re Seneca Oil Co., 76 B.R. at 812. Those holdings have not been challenged.

. When the fees were originally approved, the DOE sought, and was denied, a stay of the expenditures in the bankruptcy and district courts. The DOE did not appeal the denial of the stay by the district court.

. Cf. In re Mahan & Rowsey, Inc., 817 F.2d 682, 684 (10th Cir.1987) (constructive trust was proper to recover excess payments for oil drilling and completion costs); Haskell Lemon Constr. Co. v. Independent School Dist. No. 12, 589 P.2d 677, 681-82 (Okla.1979) (reversed dismissal of constructive trust claim where plaintiff asserted that school district paid money to second contractor that plaintiff should have received); G & M Motor Co. v. Thompson, 567 P.2d at 83-84 (court allowed a constructive trust over pro rata share of proceeds of life insurance policies where a portion of the policies' premiums were paid with embezzled funds); Goldsby v. Juricek, 403 P.2d 454, 458 (Okla.1965) (illegal agreement to depress the sale price of property and avoid competitive bidding justified imposition of constructive trust); Easterling, 651 P.2d at 681 (breach of an oral contract is not enough to justify a constructive trust); Cacy, 619 P.2d at 202 (absent fraud, duress, or any unconscionable conduct, a constructive trust was not justified).

. The DOE argues that appellants waived this issue by not raising it before the bankruptcy court. But appellants apparently did raise it in their supplementary memorandum to the bankruptcy court. See Appellants' November 10, 1987 Reply Br. at 4. Moreover, the district court decided this issue on the merits; thus, we conclude that it may properly be considered on appeal.

. Thus, the phrase "arising under” is interpreted more expansively for purposes of the TECA's jurisdiction than it is for purposes of the federal question jurisdiction of the district courts. For example, unlike federal question jurisdiction, the TECA's jurisdiction can be created by defenses that raise ESA/EPAA issues.

. On the other hand, resolving the priority issue requires that we analyze the nature of the DOE’s claim. That anaiysis may involve an examination of the DOE’s regulations. But "not every case that in some manner involves the EPAA necessarily raises EPAA issues.” Uni Oil, 646 F.2d at 952.

. We note that the Fifth Circuit recently dismissed an appeal for lack of subject matter jurisdiction in a case that involved, among other things, the same issue as the one raised in this case. In re Compton Corp. v. Department of Energy, No. 88-1680 (5th Cir. Jan. 30, 1989). That case was dismissed in a two-sentence unpublished order which contained no discussion of the jurisdictional issue. If the Fifth Circuit’s dismissal is a determination that TECA has exclusive jurisdiction over the issue of whether a Section 209 restitution claim is a fine, penalty, or forfeiture under the Bankruptcy Code, we respectfully disagree.

. The district court held that the DOE’s claim is not a "fine, penalty, or forfeiture” largely because the district court felt bound by the TECA's decision in West Texas Marketing. As noted above, we do not believe that the TECA had jurisdiction to decide that issue in West Texas Marketing. Nevertheless, we agree with the TECA’s conclusion that the DOE’s claim is not a fine, penalty, or forfeiture.