2006 OK CIV APP 90

In The Matter of the ESTATE OF
Charles C. WELLSHEAR,
deceased.

Virginia R. Wellshear,
Petitioner/Appellee,

v.

Kedre D. Mellor, CPA/PFS; Kedge C.
Wellshear; Kraig A. Wellshear,
Defendants/Appellants,

and

Fidelity Investments; Fidelity Brokerage
Services, LLC; Fidelity Services Compa-
ny, Inc., and John Does 1 thru 10, Defen-
dants.

No. 101,384.

Court of Civil Appeals of Oklahoma,
Division No. 4.

Feb. 28, 2006.

Rehearing Denied June 20, 2006.

Jon E. Brightmire, Varley H. Taylor, Jr., James P. McCann, Doerner, Saunders, Daniel & Anderson, L.L.P., Tulsa, OK, for Appellee.

D. Faith Orlowski, Steven K. Balman, Brian S. Gaskill, Sneed Lang, P.C., Tulsa, OK, John H. Trudgeon, Hartzog, Conger, Cason & Neville, P.C., Oklahoma City, OK, for Appellants.

OPINION BY JOHN F. REIF, Judge.

¶ 1 This appeal concerns conflicting claims to the individual retirement account (IRA) owned by Dr. Charles C. Wellshear at the time of his death. Dr. Wellshear's three adult children from his first marriage claim the IRA based upon their designation as primary beneficiaries in a form signed by Dr. Wellshear, and on file with the custodian of the IRA. A conflicting claim to the IRA is asserted by Dr. Wellshear's surviving spouse who had been married to him for the twenty-year period preceding his death. Surviving spouse alternatively contends that (1) the IRA beneficiary designation was a testamentary disposition of the IRA and was not executed with the necessary testamentary formalities, and (2) the IRA is subject to her forced share election to take against the will.

¶ 2 Surviving spouse sought and obtained a temporary injunction to preserve the IRA intact pending the litigation of the parties' conflicting claims on the merits. Children/beneficiaries bring this appeal seeking vacation of the temporary injunction on the ground that neither of the contentions of surviving spouse is supported by the law. Children/beneficiaries essentially maintain that the lack of legal support for the contentions of surviving spouse means that she has not satisfied the requirement of "probability of success on the merits" to support a temporary injunction. Upon review of the record and applicable law, we hold that surviving spouse has cognizable claims against children/beneficiaries to recover a portion of the value of the IRA, but that such claims do not affect the distribution of the IRA to the children/beneficiaries.

I.

¶ 3 Federal law extends tax benefits to IRAs that meet the requirements of 26 U.S.C. § 408. The parties agree that the IRA in question meets the requirements of

§ 408. Internal Revenue Service regulations that govern such IRAs expressly provide for distributions of the IRA to beneficiaries upon the death of the owner and define "beneficiaries" to include "any person designated by the [owner] to share in the benefits of the account after death of the [owner]." 26 C.F.R. Internal Revenue Service § 1.408–2(b)(7) and (8). Neither federal statutory law nor federal regulations prescribe the manner in which a beneficiary is to be designated.

¶ 4 The case of *E.F. Hutton & Co. v. Wallace,* 863 F.2d 472 (6th Cir.1988), involved conflicting claims to an IRA and competing legal arguments by the parties that are strikingly similar to the case at hand. In *E.F. Hutton,* "the sole issue ... was 'whether the assets of a custodial, self-directed IRA are part of the [Michigan] probate estate of the owner-decedent, or whether they pass directly to a beneficiary previously named by the owner decedent.' " The United States Court of Appeals noted that, when the district court made its decision, no Michigan court had resolved this question.

¶ 5 Both the district court and court of appeals in *E.F. Hutton* looked to Michigan case law that had decided analogous controversies. The district court rejected the named beneficiary's argument that an IRA with a named beneficiary is comparable to an insurance policy, a trust agreement, or a "Totten trust." The district court reasoned that the IRAs were custodial accounts rather than trust accounts, and that E.F. Hutton was no more than a custodial agent of such accounts. The district court concluded that E.F. Hutton's authority as agent lapsed upon the owner's death and, therefore, E.F. Hutton was without authority to pass the assets of the IRA to the designated beneficiary. This argument is substantially the same as the argument surviving spouse made to the court below and in her answer brief.

¶ 6 The court of appeals expressed the opinion that the district court did not correctly interpret individual retirement accounts under Michigan law. The court of appeals was more persuaded by the fact that "Michigan courts have upheld beneficiary designations in a variety of contractual arrangements analogous to IRA's." *Id.* at 473. In particular, the court of appeals cited a Michigan Supreme Court case holding "the proceeds from an insurance policy are generally payable to the named beneficiary of the policy, outside of the insured's probate estate." *Id.* (citation omitted). The court of appeals said that it "fail[ed] to see how an insurance policy designation meaningfully differs from an IRA beneficiary designation in this regard [i.e., passing the benefits outside of the estate]." *Id.* This is substantially the same position taken by children/beneficiaries both in the trial court and here on appeal.

¶ 7 The *E.F. Hutton* opinion further noted that the Michigan Legislature passed a statute addressing beneficiary designations for IRAs shortly after the district court decision. This statute (1) excluded an IRA from a decedent's estate, (2) directed payment of the assets of the IRA to the beneficiary specified in the custodial IRA agreement, and (3) declared that the designation of beneficiary shall not be considered testamentary.

¶ 8 The *E.F. Hutton* case clearly recognizes that a court should look to state law in answering the question whether a beneficiary designation for an IRA is a testamentary disposition that must be executed with testamentary formalities. Given the fact that the Oklahoma Legislature has not answered this question by statute, the answer must be found in Oklahoma case law. The parties agree that no Oklahoma case has decided this particular issue and each relies on cases that have decided analogous controversies.

¶ 9 Surviving spouse contends that the beneficiary designation at issue is similar to the payable-on-death direction in the owner-controlled bank account in *Waitman v. Waitman,* 1972 OK 157, 505 P.2d 171. In *Waitman,* the Oklahoma Supreme Court ruled that the payable-on-death direction was "in the nature of a testamentary disposition" because it was "intended to become effective upon, and only upon, [the owner's] death." *Id.* at ¶ 21, 505 P.2d at 175 (citation omitted). The problem with applying the *Waitman* analysis to the beneficiary designation for the IRA at issue is that the beneficiary status of the payee in *Waitman* was created by the owner of the account. In contrast, distribu-

tions to beneficiaries and the right to designate those beneficiaries are provided by federal law governing IRAs.

¶ 10 The right to designate a beneficiary for an IRA recognized by federal law is more like the right to designate a beneficiary to receive retirement benefits on the premature death of the member of the retirement system. The Oklahoma Supreme Court has held that such beneficiary designations are not wills. *Pepper v. Peacher*, 1987 OK 71, 742 P.2d 21.

¶ 11 In reaching this conclusion, the Oklahoma Supreme Court observed that the primary function of membership in a retirement system is to provide retirement benefits to the member. The same is true of an IRA. The Court further observed that "the dispersion of accrued benefits on the premature death of a member was clearly a secondary consideration in the contractual agreement creating the membership." *Id.* at ¶ 14, 742 P.2d at 24. Again, this is also the same for an IRA.

¶ 12 The Court held that it would not "extend the definition of the term 'will' to instruments with a primary purpose independent of the disposition of property or which, in their normal mode of operation, are intended to pass benefits directly to a named party outside of the operation of a will or the statutes governing intestacy." *Id.* We think it is abundantly clear that the Oklahoma Supreme Court does not view beneficiary designations to retirement benefits, whether provided by a retirement system or provided by law for an IRA, to be testamentary dispositions.

## II.

■ ¶ 13 We similarly conclude that surviving spouse has no claim to the IRA based on 84 O.S.2001 § 44(B)(1). This statute provides, in pertinent part, that "no spouse shall bequeath or devise away from the other so much of the estate of the testator that the other spouse would receive less in value than an undivided one-half interest in the property acquired by the joint industry of the husband and wife during coveture." Given the fact that the beneficiary designation is not

testamentary in nature, it is neither a bequest nor devise. Any claim to share in the IRA based upon Dr. Wellshear's disposition of "property acquired by the joint industry of the [parties] during coveture" must find support other than § 44.

## III.

■ ¶ 14 The fact that an IRA beneficiary designation need not be executed with testamentary formalities, or that a beneficiary's interest passes directly to him or her outside of probate, does not mean that surviving spouse has no claim to the value of the IRA. Even though Dr. Wellshear was the "owner" of the IRA and could exercise the right to designate anyone he wanted as beneficiaries, the IRA in question was not funded entirely by Dr. Wellshear's separate property. In addition to funds that Dr. Wellshear had accumulated in retirement accounts prior to his marriage to surviving spouse in June of 1983, the IRA also consisted of funds contributed to various retirement accounts after his marriage and through the late 1990s. It also consisted of $77,000 in separate funds of surviving spouse that she turned over to Dr. Wellshear in 1984. Surviving spouse testified Dr. Wellshear told her that he deposited these funds to a 401(K) retirement account. In other words, the whole value of the IRA was not Dr. Wellshear's to dispose of by beneficiary designation or otherwise.

¶ 15 Oklahoma law has long recognized that if one spouse "gave away [the parties'] jointly acquired property with an intent to defraud [the other spouse] of … marital rights to this property upon [the giving spouse's] death then the law should be just as responsive in protecting [the defrauded spouse's] interest as in instances … where the gift is made anticipatory to a divorce, or whether it is given incomplete with an attempt to defeat [the spouse's] interest upon [the giving spouse's] death." *Sanditen v. Sanditen*, 1972 OK 39, ¶ 8, 496 P.2d 365, 367–68. "In all of these instances the princip[al] criteria is the fraudulent intent of [one spouse] to deprive [the other spouse] of [his/her] marital rights as provided by statute." *Id.* at ¶ 8, 496 P.2d at 368.

¶ 16 The *Sanditen* case stresses, however, that one spouse "cannot complain of reasonable gifts by the [other] to ... children by a former marriage," and that Oklahoma's forced share statute "does not in any way limit or restrict [a spouse] in making such gifts." *Id.* at ¶ 9, 496 P.2d at 368. The *Sanditen* case stressed "[i]t is only when the gift has sinister elements of fraud of the marital rights that the law protects the [spouse from gifts by the other]." *Id.*

¶ 17 The *Sanditen* case further provided that "[i]n determining the good faith of the charitable transfers the court must look to the condition and relationship of the parties, the amount of the gifts in relation to the [spouse's] estate and income and all other attending circumstances." *Id.* The burden of proof is upon the spouse challenging a "charitable transfer" as having been made in fraud of the marital rights. *Id.*

¶ 18 The purpose served by the rule in *Sanditen* calls for its application regardless of the form of the marital property or the means by which the "charitable transfer" of such property takes place. We see no reason why it should not apply to retirement contributions made during marriage that are rolled into an IRA just because the "charitable transfer" of the value of such contributions occurs by means of a "beneficiary designation." Surviving spouse should have the opportunity under the *Sanditen* rule to establish the value of such contributions and recover her marital share to the value of such contributions.

¶ 19 In addition, surviving spouse has made a colorable showing that $77,000 of her separate funds were contributed to a retirement fund of Dr. Wellshear that was also rolled into the IRA. Surviving spouse may have a right to recover the proportional value of the IRA attributable to this distinct contribution, independent of her status as surviving spouse.

### IV.

¶ 20 The fact that surviving spouse has colorable claims to some of the value of the IRA does not mean she has a claim to share in the IRA itself or can enforce her claim against the IRA. *Sanditen* recognizes *the right* of a surviving spouse *to recover* the value of a fraudulent transfer *from the recipient* and not the right to recover any particular asset that has been transferred.

¶ 21 This limitation is particularly important in the case of an IRA. We believe federal law intends for a custodian/administrator to rely on the disposition scheme recognized by federal law, including beneficiary designations, in effecting a disposition of an IRA upon the death of the owner. We believe federal law contemplates such reliance without regard to any state law claim that an estate, surviving spouse, or heir may have against the designated beneficiaries for some or even all of the value of the IRA. Other than cases where state law is unsettled on the issue of whether beneficiary designations are testamentary dispositions, a custodian/administrator should not have to seek judicial relief before making a disposition of an IRA in accordance with the federal law scheme for disposition.

¶ 22 If the rule were otherwise, a custodian/administrator would be exposed to a risk of liability in making dispositions of IRAs that federal law does not expressly impose and, in fact, reflects an intent to avoid. A contrary rule would also place a burden upon a custodian/administrator to hire counsel and incur the expense of legal proceedings, like interpleader, where the controversy does not concern the IRA itself, but concerns who is entitled to share in the value of the IRA and the extent of a particular party's share. In such cases, one party's right of recovery vis-à-vis any other party's right is the same whether the IRA is distributed or not. The custodian/administrator simply has no interest in the outcome of such a case.

### V.

¶ 23 The final point we must consider is the nature of surviving spouse's claims to share in the value of the IRA. Surviving spouse asserts claims to recover money which she is arguably entitled to receive, but which cannot be paid directly to her and is included in distributions to children/beneficiaries. Her claims against children/beneficiaries are equitable in nature as a *cestui que*

*trust* of both a resulting trust and a constructive trust. As such, she is not a creditor of children/beneficiaries, but is herself in a beneficiary relationship with them. Statutes exempting distributions of IRA from claims of creditors do not apply to such claims of surviving spouse.

¶ 24 Assuming the court may ultimately determine that the IRA included $77,000 of surviving spouse's separate funds, she would be entitled to a resulting trust upon the distribution to each beneficiary to the extent the value of the distribution includes value attributable to the $77,000 contribution and any value added thereto from earnings of the IRA. *See First National Bank of Sayre v. Sanders,* 1934 OK 409, 35 P.2d 889 (syllabus 2) which states:

> Resulting trusts are those which arise where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title. In such a case, a trust is implied or results in favor of the person for whom the equitable interest is assumed to have been intended, and whom equity deems to be the real owner.

¶ 25 In *Guyer v. London,* 1940 OK 272, 102 P.2d 875, the Oklahoma Supreme Court affirmed the finding of a resulting trust in favor of a surviving wife as a consequence of husband trading property in which wife had an admitted interest for property taken in the husband's name alone. The Court noted that "consideration for the property in controversy was furnished by [wife] without any intention that the title thereto and enjoyment thereof should vest in or inure to [husband alone]." *Id.* at ¶ 8, 102 P.2d at 879. The Court also said that "the intent that the beneficial interest is not to go with the legal title may be inferred from the facts and circumstances, and that equity in such case will imply a trust in favor of the person for whom the equitable interest is assumed to have been intended." *Id.* Additionally, in case of a resulting trust, it is "immaterial whether the trust arose from inadvertence and mistake or from . . . fraud."

¶ 26 Likewise, assuming the court may ultimately determine that the IRA included contributions made during the marriage of Dr. Wellshear and surviving spouse and that Dr. Wellshear made the beneficiary designations to defraud surviving spouse of her marital rights to such contributions, surviving spouse would be entitled to a constructive trust upon the distribution to each beneficiary to the extent that the value of the distribution includes half of the value attributable to the marital contributions and any value added thereto from earnings of the IRA. *See Dean v. Jelsma,* 1957 OK 163, ¶ 0, 316 P.2d 599, 601 (syllabus 6), which states:

> Where one obtains or retains legal title to property under circumstances which renders it unconscionable for the holder of the legal title to retain it and enjoy the beneficial interest, equity will impress a constructive trust on the property so acquired in favor of the party who is equitably entitled thereto.

¶ 27 In the case of *Phillips v. Ball,* 1960 OK 145, ¶ 15, 358 P.2d 193, 197, the Oklahoma Supreme Court said, "A constructive trust may arise from constructive fraud." The Court also observed that "neither actual dishonesty of purpose nor intent to deceive is an essential element of constructive fraud." *Id.* at ¶ 13, 358 P.2d at 197. Constructive fraud consists of "a breach of legal or equitable duty which . . . the law declares fraudulent because of its tendency to deceive others, to violate public or private confidences . . . or [to] injure public interest, [irrespective of moral guilt of the fraud feasor]." *Id.* "Where a party obtains legal title to property . . . in any . . . unconscientious [*sic* ] manner, equity will impress a constructive trust on property so obtained for one who in good conscience is entitled to it." *Id.* at ¶ 15, 358 P.2d at 197 (citations omitted).

¶ 28 A constructive trust can be imposed on property that has passed to a third party even though there was no fraud, deceit, subterfuge, or any wrongdoing on the part of the third party. *See Barnsdall State Bank v. Springer,* 1936 OK 314, 56 P.2d 390; *Isenhower v. Duncan,* 1981 OK CIV APP 31, 635 P.2d 336. "The proper basis for impressing a constructive trust is to prevent

unjust enrichment." *G & M Motor Co. v. Thompson*, 1977 OK 142, ¶ 8, 567 P.2d 80, 83 (citation omitted).

¶ 29 In *G & M Motor Co.*, the Oklahoma Supreme Court affirmed the imposition of a constructive trust in favor of G & M Motor on the proceeds of a life insurance policy that the decedent had purchased, in part, with funds embezzled from G & M Motor. The Supreme Court held that "[w]here the wrongdoer mingles wrongfully and rightfully acquired funds, owner of the wrongfully acquired funds is entitled to share proportionately in ... property [acquired by the wrongdoer] to the extent of his involuntary contribution." *Id.* at ¶ 9, 567 P.2d at 83 (citation omitted). This pro rata relief includes the amount of the wrongfully acquired money, interest and costs. *Id.*

¶ 30 Finally, Division I of this court has held that a constructive trust may be imposed on funds distributed to the designated beneficiary of an IRA and a pension/profit sharing plan. *Matter of Estate of Bruner*, 1993 OK CIV APP 109, 864 P.2d 1289. In *Bruner*, husband did not change wife as beneficiary of his life insurance, his IRA, and a pension/profit sharing plan, despite a property settlement agreement (incorporated into the parties' divorce decree) whereby wife gave up and assigned all her right, title and interest in husband's insurance, the IRA account and one-half of the pension/profit sharing plan. The court allowed wife to retain the insurance proceeds, effectively treating husband's inaction as a choice to give wife more than coverage for the alimony obligation in the divorce decree. However, the court found she had no right to the proceeds of the IRA and one-half of the pension/profit sharing plan based upon the property settlement agreement. Division I upheld the trial court's imposition of a constructive trust in favor of husband's estate under the principle that the wife "has title to certain property ... that another [the estate] has a better

right to." *Id.* at ¶ 12, 864 P.2d at 1292 (citations omitted).

### VI.

¶ 31 In the case at hand, surviving spouse had a reasonable basis to initially challenge the distribution of the IRA to children/beneficiaries given the fact that no Oklahoma statute or decision has addressed whether an IRA beneficiary designation is testamentary in nature and requires testamentary formalities in its execution. The law that this court finds most closely analogous to this circumstance dictates that beneficiary designations for retirement benefits do not have to comply with testamentary formalities and such benefits pass to the designated beneficiaries outside the probate estate. While surviving spouse has raised and provided preliminary support for claims to recover some of the value of the IRA benefits from children/beneficiaries, she has no claim to share in the IRA itself or right to enforce her claims against the IRA. The claims of surviving spouse are for a resulting trust and a constructive trust upon the distributions to children/beneficiaries.[1]

¶ 32 Accordingly, there is no basis for injunctive relief to restrain the custodian/administrator from distributing the benefits to children/beneficiaries, pending litigation of the claims of surviving spouse to recover some of the value of the distributed benefits.

¶ 33 The grant of the preliminary injunction was erroneous as a matter of law and is VACATED.

GABBARD, P.J., concurs, and RAPP, V.C.J., concurs specially.

RAPP, V.C.J., specially concurring.

¶ 1 I concur in the Majority's analysis regarding distribution of the IRA to the designated children/beneficiaries. However, I would not dissolve the injunction nor author-

---

1. Surviving spouse may also have a right to injunctive relief against children/beneficiaries to prevent dissipation of her colorable pro rata share of the distribution, as suggested by the special concurrence. The need for such relief is unclear, however, in view of the rule that "[a] resulting trust arises ... in the same transaction in which the legal title passes, at the time that legal title passes, on consideration advanced before ... that time." *Adams v. Adams*, 1952 OK 246, ¶ 0, 256 P.2d 458, 459 (syllabus 2). In any event, surviving spouse did not request injunctive relief against children/beneficiaries.

ize the distribution of the entire IRA to the designated children/beneficiaries for the reason that the surviving spouse has made a preliminary showing of a valid claim to at least part of the IRA. Instead, I would have the trial court appoint a receiver for the children/beneficiaries under 12 O.S.2001, § 1551(1), to receive the IRA distribution. I would also direct the trial court to change the injunction to direct the children/beneficiaries to make payment to the receiver of the monies claimed by the surviving spouse pending resolution of her claims and to protect her interests per 12 O.S.2001, § 1382, and also those of the children/beneficiaries.