**In re The DEPARTMENT OF ENERGY STRIPPER WELL EXEMPTION LITIGATION.**

**MOBIL OIL CORPORATION, et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF ENERGY, et al., Defendants.**

**Civ. A. No. 78–1070.**

United States District Court, D. Kansas.

June 5, 1990.

## MEMORANDUM AND ORDER

THEIS, District Judge.

This matter is before the court on the motion of Mobil Oil Corporation (Mobil) for reconsideration of the court's prior opinion, Doc. 1679, which granted the Department of Energy's (DOE) motion for summary judgment. 722 F.Supp. 649. The court ordered Mobil to deposit the sum of $10,-214,510, plus interest accruing after March 31, 1989 through the date of payment, into the escrow account established by the court as restitution for stripper well overcharges. The court denies Mobil's request for oral argument.

Mobil's motion for reconsideration raises three issues: that the court erroneously found that Mobil sold all the oil at issue; that the court imposed the operator liability doctrine without discussion of the doctrine; and that the court incorrectly awarded interest on portions of the overcharges attributable to severance tax payments to certain states. Upon review, the court concludes that the initial opinion did contain some factual misstatements. For purposes of summary judgment, it is undisputed that Mobil did not sell all the stripper well oil at issue. The court holds, however, that imposition of operator liability is ap-

propriate in this case. Mobil is liable for the entire amount of the overcharges. The court reaches the same conclusion as it reached in its prior opinion, even though in the prior opinion the court failed to discuss specifically the operator liability doctrine.

In the opinion granting DOE's motion for summary judgment, the court stated, incorrectly, that Mobil was the sole working interest owner who sold all the stripper well oil produced from Mobil-operated properties. 722 F.Supp. at 658. Since Mobil did not sell all the miscertified oil, Mobil can be held liable only through the application of the operator liability doctrine. The court thus turns to the issue of operator liability. The court agrees with Mobil that operator liability has in the past been imposed in at least two general situations: when the operator is the animating force responsible for the overcharges, or when the operator is held liable as a matter of administrative convenience. *See United States v. Exxon Corp.,* 773 F.2d 1240, 1269–72 (Temp.Emer.Ct.App.1985); *Sauder v. Department of Energy,* 648 F.2d 1341, 1347–49 (Temp.Emer.Ct.App.1981). Imposition of operator liability is discretionary. *See Sauder,* 648 F.2d at 1347–48.

Mobil argues that it should not be held liable because it was not the animating force behind the deficiencies to the escrow. According to Mobil, Sun Company, Inc. and Koch Industries, Inc. caused the deficiencies to the escrow by failing to remit severance taxes and other funds into the escrow. Mobil also argues that it did not unilaterally decide to certify the oil in violation of the price regulations. Mobil did, however, obtain an injunction from this court permitting it to certify the oil at issue as stripper well oil. Mobil additionally contends that administrative convenience to DOE should not prevail. Mobil requests that, if the court decides to impose liability on Mobil as operator, the court base its decision on administrative convenience alone. Mobil further requests that the court expressly reserve Mobil's rights against first purchasers and working interest owners.

The court believes that the present case is one in which operator liability is appropriate. The court declines Mobil's invitation to rely solely on administrative convenience in imposing operator liability. The court finds that either or both of the above-cited reasons (animating force and administrative convenience) justify the imposition of liability. Mobil decided to certify the oil in question as stripper well oil. Mobil sought the protection of the court's injunction and should be held responsible for its failure to comply with the provisions of the injunction regarding the payment of overcharges into escrow. Further, pursuing the individual interest owners would place an enormous burden on the DOE.

In its memorandum in support of its cross-motion for summary judgment and in opposition to the DOE's motion for summary judgment, Mobil asserted that the issue of Mobil's deficiencies could easily be resolved since only four other parties were involved. *See* Doc. 1561. Mobil now argues that if the court rules against it on its claims against the first purchasers, it will be forced to proceed *in this court* against the hundreds of working interest owners. Doc. 1703 at 10 n. 9; Reply Memorandum, Doc. 1746 at 6. Mobil is apparently under the misapprehension that this court would be the appropriate forum for the resolution of any such claims. The court doubts that it would have jurisdiction over the working interest owners located in other states; likewise, venue would not likely be appropriate in this District. Mobil's claims against the working interest owners would need to be resolved in separate civil actions, not in this multidistrict litigation. *E.g., Exxon Corp. v. Jarvis Christian College,* No. TY–80–432–CA (E.D.Tex., Tyler Div. Aug. 25, 1989) (recognizing a potential federal common law action for reimbursement from interest owners from the Hawkins Field Unit, following the imposition of liability on Exxon for overcharges in *United States v. Exxon Corp.,* 561 F.Supp. 816 (D.D.C.1983), *aff'd* 773 F.2d 1240 (Temp. Emer.Ct.App.1985), *cert. denied,* 474 U.S. 1105, 106 S.Ct. 892, 88 L.Ed.2d 926 (1986)). The court declines Mobil's suggestion to expressly reserve Mobil's rights of reimbursement from the first purchasers and the working interest owners. The court expresses no opinion as to whether any such rights exist or how they may be enforced.

Mobil argues that the court failed to discuss Mobil's payment of severance taxes to New Mexico and Texas. The court was aware of Mobil's claim regarding New Mexico and Texas severance taxes. *See* 722 F.Supp. at 652. That the court did not separately discuss each state tax involved in this dispute does not constitute error. The court focused on the State of Oklahoma primarily because Mobil sought to add Oklahoma as a third party defendant, causing Oklahoma to become the only state actively involved in this matter.

Mobil argues that the Tax Injunction Act, 28 U.S.C. § 1341, precluded it from paying severance taxes into the court's escrow. The court previously considered and rejected Mobil's argument that the Tax Injunction Act barred the payment of state severance taxes into the escrow. *See* 722 F.Supp. at 659 (discussing Oklahoma severance taxes). The same rationale applies to New Mexico and Texas taxes. It is important to note that Mobil could have complied both with this court's escrow order and with the states' severance tax laws, by paying the required amount to the escrow and the required amount to the states. The Tax Injunction Act would have had no applicability in such a situation. Mobil chose not to pay both the escrow and the states.

■ Mobil asserts that since it properly paid severance taxes to New Mexico, Texas, and Oklahoma, it should not be liable for prejudgment interest on those amounts, especially prejudgment interest at DOE policy rates. New Mexico and Texas refunded the severance taxes in question to Mobil, apparently without interest. Oklahoma has refunded some of the severance taxes in question to Mobil with interest at less than the DOE policy rates. Mobil then deposited these funds into escrow. The court's order granting summary judgment awarded prejudgment interest at DOE policy rates on all overcharge amounts.

The court noted in the prior order that it has "some" discretion in deciding whether

to award prejudgment interest. 722 F.Supp. at 660 (citing cases). The court analyzed whether the DOE policy rates of interest should apply and concluded that they should. *Id.* at 659–661. The court specifically found that Mobil had identified no compelling reasons justifying either the denial of prejudgment interest or the award of interest at a lower rate. *Id.* at 661. The court did not discuss the Tax Injunction Act in determining what interest rates should be applied. Since the Tax Injunction Act did not bar the payment of what Mobil calls "taxes" into escrow, it has no applicability on the issue of interest rates. The Tax Injunction Act and Mobil's tax disputes certainly do not constitute compelling reasons justifying an interest rate lower than the DOE policy rates.

The court has examined the rest of Mobil's arguments and finds them to be without merit. The court finds no compelling reason to depart from the DOE policy rates of interest. The court declines to expressly reserve the question of the liability of Oklahoma, New Mexico, and Texas to Mobil for interest at the DOE policy rates.

IT IS BY THE COURT THEREFORE ORDERED that Mobil's motion for reconsideration is hereby denied.