983 F.2d 172
 MOBIL OIL CORPORATION, et al., Plaintiffs,
v.
UNITED STATES DEPARTMENT OF ENERGY, et al., Defendants,
Mobil Oil Corporation, Defendant on Counterclaim,
v.
MOBIL OIL CORPORATION, Third-Party-Plaintiff-Appellee,
v.
STATE OF OKLAHOMA; The Oklahoma Tax Commission; Sun
Company, Inc.; Kerr-McGee Corporation,
Third-Party-Defendants,
and
Koch Industries, Inc., Third-Party-Defendant-Appellant,
United States of America, Counter-Claimant,
and
State of Louisiana; Conoco Inc.; Anadarko Petroleum
Corporation; Exxon Corporation; Texaco Inc.;
Phillips Petroleum Company, and other
interest owners, Amici Curiae.
 No. 91-3097.
 United States Court of Appeals,
Tenth Circuit.
 Dec. 31, 1992.
 
 N. Sue Allen (Kelley D. Sears with her on the briefs), Wichita, KS, for appellant.
 Leslie K. Dellon (Charles L. Kaiser & Mary V. Laitos of Davis, Graham & Stubbs, Denver, CO, Evan J. Olson & David E. Bengtson of Hershberger, Patterson, Jones & Roth, Wichita, KS, David A. Holzworth of Lepon, McCarthy, Jutkowitz & Holzworth, DC, Arthur G. Hofmann, Mobil Exploration & Producing U.S. Inc., Dallas, TX, with her on the brief), of Lepon, McCarthy, Jutkowitz & Holzworth, DC, for appellee.
 William D. Treeby, Noel J. Darce & David K. Hall of Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, LA, David M. Latham & Larry D. Dyess of Eldred & Clauer, Baton Rouge, LA, on the brief for amicus curiae State of LA.
 Joseph W. Kennedy & Robert W. Coykendall of Morris, Laing, Evans, Brock & Kennedy, Wichita, KS, James J. Ward, Jr. of Anadarko Petroleum Corp., Robert J. Ochs of Conoco Inc., Houston, TX, for amici curiae Conoco Inc. & Anadarko Petroleum Corp.
 David J. Beck of Fulbright & Jaworski, Reagan Burch & Steven M. Stricklin of Baker & Botts, W.J. McAnelly, Jr. & Edward de la Garza of Exxon Corp., Houston, TX, for amicus curiae Exxon Corp.
 R. Bruce McLean & C. Fairley Spillman of Akin, Gump, Strauss, Hauer & Feld, DC, for amicus curiae Texaco Inc.
 Noel M. Hensley & George W. Bramblett, Jr. of Haynes & Boone, Dallas, TX, for amici curiae Phillips Petroleum & Jarvis Interest Owners.
 T.L. Cubbage II of Phillips Petroleum Co., Bartlesville, OK, for amicus curiae Phillips Petroleum Co.
 Monroe Clayton, Jefferson, TX, for amici curiae Lula Mae Beavers, et al.
 T. John Ward of Brown Maroney & Oaks Hartline, Houston, TX, for The Bracken Amicus.
 Tim Gavin of Carrington, Coleman, Sloman & Blumenthal, Dallas, TX, for amicus curiae Michael L. Carter, as Independent Executor of the Will and Estate of B.F. Phillips, Jr., Deceased, and as Trustee of all Trusts created under the Will of B.F. Phillips, Jr.
 Robert M. Martin, Jr. of Storey, Armstrong, Steger & Martin, Dallas, TX, for amicus curiae Elloine Moseley Sinclair.
 Barry F. Cannaday of Jenkens & Gilchrist, Dallas, TX, for amici curiae, Martha Ann Moody, Martha Ellen Rosenblum (nee Moody), Joe K. Moody, R.E. Krochman, Jr., Flora K. Krochman, Flora Bell Krochman, Martha Ann Moody, Trustee for Trust No. 2, Martha K. Moody, Trustee for Martha Ellen Moody Trust, and Ann K. Young.
 Before McKAY, Chief Circuit Judge, SETH, Senior Circuit Judge, and BRORBY, Circuit Judge.
 BRORBY, Circuit Judge.
 
 
 1
 Koch appeals the district court's decision granting summary judgment to Mobil for a right of reimbursement against Koch. In re DOE Stripper Well Exemption Litig., 743 F.Supp. 1467 (D.Kan.1990). This decision has already been appealed to the Temporary Emergency Court of Appeals (TECA) who exercised jurisdiction and affirmed the district court's holding. In re DOE Stripper Well Exemption Litig., 968 F.2d 27 (Temp.Emer.Ct.App.1992). Koch now requests us to hold exclusive jurisdiction rests with the Tenth Circuit. We instead hold we have neither the authority nor the justification to exercise jurisdiction.
 
 I. BACKGROUND
 
 2
 The Emergency Petroleum Allocation Act, 15 U.S.C. § 751, et seq. (1973) (EPAA), established a pervasive, nationwide system of crude oil and petroleum price controls, which fixed prices at all levels of production, from the well-head to the gas pump.[1] To enforce the controls, the Department of Energy (DOE) was authorized to seek injunctive relief and restitution for any overcharges. Economic Stabilization Act of 1970 (ESA), 12 U.S.C. § 1904 note, Pub.L. No. 91-379, 84 Stat. 799, as amended by Pub.L. No. 92-210, § 209, 85 Stat. 743, 748 (1971) (incorporated by reference in § 5(a)(1) of the EPAA, 15 U.S.C. § 754(a)(1)) (reprinted in 1971 U.S.C.C.A.N. 837 (ESA), and 1973 U.S.C.C.A.N. 693 (EPAA), and 1973 U.S.C.C.A.N. 2674 (Enforcement Provisions ESA)).
 
 
 3
 This litigation dates back to 1978, when Mobil filed suit against DOE seeking to invalidate the Department's ruling 1974-29 interpreting the stripper well exemption to exclude injection wells from the well count in determining a well's average daily production. The stripper well exemption exempted crude produced on property classified as stripper from stringent price regulation. To qualify as a stripper well, a property must have a daily production that did not exceed ten barrels per day during the preceding calendar year. Mobil sought the inclusion of injection wells, wells which have a lower production level, in calculating the average daily production, so that the property would be classified as stripper and fall within the exemption. On September 6, 1978, the district court granted a protective injunction allowing Mobil to continue selling the oil at the market price, but required the establishment of an escrow fund to which Mobil was obligated to pay the difference between the price received and the potentially applicable regulated price while the litigation proceeded. In 1981, the district court held, consistent with its injunction, the DOE's ruling was contrary to the intent of Congress, and injection wells should be included in the well count, thereby allowing Mobil's wells to be certified as stripper. In re DOE Stripper Well Exemption Litig., 520 F.Supp. 1232 (D.Kan.1981).
 
 
 4
 In 1982, TECA reversed the district court's holding that the DOE's ruling was invalid, and subsequently remanded. In re DOE Stripper Well Exemption Litig., 690 F.2d 1375 (Temp.Emer.Ct.App.1982), cert. denied, 459 U.S. 1127, 103 S.Ct. 763, 74 L.Ed.2d 978 (1983). Upon remand, the district court entered judgment for DOE, thereby holding that the oil produced from the disputed wells falls under strict price regulation. In re DOE Stripper Well Exemption Litig., 578 F.Supp. 586 (D.Kan.1983). During the period of the injunction, Koch, as the first purchaser of oil, paid severance taxes to the State of Oklahoma based on the unregulated higher price. Ultimately, when TECA ruled that injection wells were not exempt, Oklahoma refunded to Koch the increment of excess severance taxes paid.
 
 
 5
 In September 1988, DOE counterclaimed against Mobil for overcharges not paid into the escrow partly consisting of the excess amount of severance taxes paid to the State of Oklahoma by Koch. In order to recover the escrow deficiency, DOE looked to Mobil to reclaim the entire amount under the operator liability doctrine. The operator liability doctrine allows the agency to hold the owner-operator of a lease liable for the full amount of the overcharge. See Sauder v. Department of Energy, 648 F.2d 1341, 1347-49 (Temp.Emer.Ct.App.1981). The rationale behind the operator liability doctrine is largely administrative convenience: "[t]o require the agency to seek refunds from each individual property owner would place a heavy burden on the agency, limiting its ability to repair infractions of its pricing rules." Id. at 1348. The district court granted summary judgment against Mobil relying on the operator liability doctrine, for an amount which included, in part, Oklahoma's refund of excess severance taxes to Koch. In re DOE Stripper Well Exemption Litig., 722 F.Supp. 649 (D.Kan.1989), as modified by 739 F.Supp. 1446 (D.Kan.1990). The court not only relied on administrative convenience in invoking the operator liability doctrine but also noted that Mobil was the animating force behind the deficiencies to the escrow. 739 F.Supp. at 1447-48.
 
 
 6
 Simultaneously, in 1988 Mobil filed a third-party complaint against Koch for a right of restitution. Mobil contended it should be reimbursed for deficiencies to the escrow attributable to Koch's retention of the severance tax refund and late payments to the escrow. The district court invoked a federal common law right of reimbursement as a corollary to the operator liability doctrine to grant summary judgment on behalf of Mobil. In re DOE Stripper Well Exemption Litig., 743 F.Supp. at 1476. The court held Koch had been unjustly enriched and should be held responsible for the escrow deficiencies. Id. This is the decision that was first appealed to TECA and is now before this court.
 
 II. JURISDICTION
 
 7
 According to § 211(b)(2) of the ESA, "the Temporary Emergency Court of Appeals shall have exclusive jurisdiction of all appeals from the district courts of the United States in cases or controversies arising under this title or under regulations or orders issued thereunder." § 211(b)(2), 85 Stat. 749, (reprinted in 1971 U.S.C.C.A.N. 837, 844 (1971)). The purpose behind giving TECA exclusive jurisdiction of cases arising under the Act is to provide both speedy resolution and consistency of decision. Bray v. United States, 423 U.S. 73, 74, 96 S.Ct. 307, 309, 46 L.Ed.2d 215 (1975). Ultimately, the critical inquiry is whether the action for reimbursement "arises under" the ESA or EPAA. If the issue arises under the ESA or EPAA, it becomes necessary for TECA to exercise exclusive jurisdiction in order to ensure uniform interpretation of the Acts. We will consider how both the Tenth Circuit and TECA have interpreted TECA's jurisdiction.
 
 
 8
 The Tenth Circuit found TECA jurisdiction lacking in In re Seneca Oil Co., 906 F.2d 1445 (10th Cir.1990). In that case, the court equated "arising under" jurisdiction with "issue jurisdiction". In other words, TECA has exclusive jurisdiction over ESA/EPAA issues actually adjudicated by the district court. Id. at 1454. Appellant contends the present action is merely a common law suit in equity for reimbursement, an issue on its face wholly unrelated to ESA/EPAA issues. Therefore, Appellant's argument continues, it follows since there is no issue jurisdiction over this case, Seneca dictates that TECA lacks jurisdiction.
 
 
 9
 The Seneca case, however, is distinguishable from the case at bar. First, unlike the present case, TECA never affirmatively exercised jurisdiction in Seneca. Thus, the Seneca court did not address the problem that we face presently: by exercising jurisdiction we would be the second appellate court at a parallel level to review the district court's opinion. Second, whereas Seneca involved the interpretation of the Bankruptcy Code, and "[t]he ESA and EPAA provide[d] only the backdrop for the issue of the priority of the DOE's claim," id., here the ESA and EPAA are more than a backdrop. Conversely, the district court based its decision on a right of reimbursement it found was inherent in the operator liability doctrine, a concept intertwined with the ESA and EPAA. Because the district court treated the right of contribution as an ESA/EPAA issue, TECA has exclusive jurisdiction under Seneca 's "issue jurisdiction" test.
 
 
 10
 Another Tenth Circuit decision recognizes TECA's jurisdiction when interpretation of price ceilings regulations imposed by the ESA and EPAA cause a contract dispute between the parties. Mountain Fuel Supply Co. v. Johnson, 586 F.2d 1375 (10th Cir.1978), cert. denied, 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1058 (1979). Because the counterclaim invoked and implicated United States laws under ESA and EPAA, TECA had exclusive jurisdiction. Id. at 1383. Therefore, the court focused on whether the resolution of the litigation required interpretation of the ESA or EPAA (hereinafter "interpretation test").
 
 
 11
 Similarly, the current dispute involves and implicates the interpretation of the ESA and EPAA. First, the controversy originates from the DOE's interpretation of the boundaries of the stripper well exemption under the EPAA. Second, Mobil is held liable as operator for all overcharges and subsequent deficiencies to the escrow under ESA and EPAA. Third, the district court derived a federal common law right of reimbursement from the ESA. Yet, appellant asks us to disregard the last fourteen years of litigation involving the stripper well exemption and consider this case solely as a common law action in equity. Such an approach would be a total mischaracterization of this suit. In its opinion, the district court did not separate out the right of restitution from ESA/EPAA analysis. Instead, the district court interpreted prior decisions under the ESA and EPAA to impose liability on Koch "[for] funds [that] should have been paid into the court's escrow." 743 F.Supp. at 1476.
 
 
 12
 The operator liability doctrine established in Sauder, 648 F.2d at 1348, was based on ESA § 209, which provides in part: "In addition to such injunctive relief, the court may also order restitution of moneys received in violation of any such order or regulation." § 209, 85 Stat. 748, (reprinted in 1971 U.S.C.C.A.N. 843). Undoubtedly, the operator liability doctrine is within the court's restitution power and therefore arises under the ESA. It follows, then, that any other restitutionary relief the court deems appropriate for violation of the ESA/EPAA price regulations would also arise under § 209 of the ESA. Consequently, under both Seneca's issue jurisdiction definition of arising under and Mountain Fuel 's interpretation test, the right of reimbursement adjudicated at the district court level is an ESA/EPAA issue requiring interpretation of § 209 of the ESA, and therefore according to Tenth Circuit law, TECA has exclusive jurisdiction on the appeal.
 
 
 13
 This explanation appears to comport with TECA's interpretation of the boundaries of its own jurisdiction. TECA has articulated two principal inquiries in recognizing its jurisdiction: "whether resolution of the litigation requires the application or interpretation of the EPAA or its regulations and whether any EPAA issue presented to this Court has been adjudicated in the court below." Pennzoil Exploration & Produc. Co. v. Lujan, 928 F.2d 1139, 1141 (Temp.Emer.Ct.App.1991). Thus, TECA has adopted both the issue jurisdiction and interpretation tests.
 
 
 14
 Using these tests, TECA has now twice exercised jurisdiction to consider whether the statutes allow a federal common law cause of action for reimbursement. First, in In re Phillips Petroleum Co., 943 F.2d 63 (Temp.Emer.Ct.App.1991), the petitioners brought a writ of mandamus to TECA alleging serious errors on the part of the district court judge, one of which was allowing a federal common law cause of action for reimbursement under EPAA. TECA recognized their jurisdiction to determine whether the ESA/EPAA allow a such a cause of action:
 
 
 15
 We think it clear that to the extent properly invoked the Temporary Emergency Court of Appeals ... would have exclusive jurisdiction of issues finally determined by the district court of whether Exxon had a federal common law right of reimbursement implied from the ESA/EPAA and of defenses in light of any such implied right, together with inextricably commingled threshold or procedural issues.
 
 
 16
 Id. at 66.
 
 
 17
 TECA also exercised jurisdiction in the present case relying heavily on Phillips. In re DOE Stripper Well Exemption Litig., 968 F.2d 27. TECA once again specifically stated: "We have expressly acknowledged our jurisdiction to consider whether these statutes allow a federal common law cause of action for reimbursement." Id. at 30. Thus, it is the law of the case that TECA has exclusive jurisdiction in this matter. Further, TECA's exercise of exclusive jurisdiction in this situation is consistent with the Phillips case and TECA's jurisdictional tests.
 
 
 18
 Finally, we question our ability to accept jurisdiction once TECA has already exercised it over the same district court decision. According to § 211(g) of the ESA,[2] decisions by TECA are only reviewable by the Supreme Court. Section 211(g), 85 Stat. 750 (reprinted in 1971 U.S.C.C.A.N. 846). Inherent in the language of § 211(g) is the notion that TECA is a parallel court with the United States Courts of Appeals. Permitting two parallel courts to exercise appellate jurisdiction would create inconsistency and chaos in the federal judiciary.
 
 
 19
 For all of the aforementioned reasons, the case is DISMISSED for lack of subject matter jurisdiction.
 
 
 
 [1]
 According to 15 U.S.C. § 760g, the President's authority to impose such controls converted from mandatory to discretionary on March 15, 1979, and expired altogether on September 30, 1981
 
 
 [2]
 Section 211(g) reads in pertinent part:
 Within thirty days after entry of any judgment or order by the Temporary Emergency Court of Appeals, a petition for a writ of certiorari may be filed in the Supreme Court of the United States, and thereupon the judgment or order shall be subject to review by the Supreme Court in the same manner as a judgment of a United States court of appeals as provided in section 1254 of title 28, United States Code.