# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

IN RE: THE DEPARTMENT OF
ENERGY STRIPPER WELL
LITIGATION.

---

THE STATES OF ALABAMA,
CALIFORNIA, CONNECTICUT,
IDAHO, INDIANA, MARYLAND,
MICHIGAN, MISSISSIPPI,
MONTANA, OHIO, SOUTH
DAKOTA, VERMONT, WISCONSIN
and WYOMING,

     Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT
OF ENERGY and CHEVRON U.S.A.
INC.,

     Defendants-Appellees.

No. 99-3065

---

THE STATES OF ALABAMA,
CALIFORNIA, CONNECTICUT,
IDAHO, INDIANA, MARYLAND,
MICHIGAN, MISSISSIPPI,
MONTANA, OHIO, SOUTH
DAKOTA, VERMONT, WISCONSIN
and WYOMING,

     Plaintiffs - Appellants,

v.

No. 99-3066

UNITED STATES DEPARTMENT
OF ENERGY, Hazel O'Leary,
Secretary; OFFICE OF HEARINGS
AND APPEALS, Department of
Energy, George B. Breznay, Director,

    Defendants - Appellees,

and

CHEVRON, USA, INC.,

    Intervenor-Defendant-
    Appellee.

DELAWARE, HAWAII, ILLINOIS,
KANSAS, NEBRASKA, NEVADA,
NORTH CAROLINA, RHODE
ISLAND and WEST VIRGINIA, THE
TERRITORY OF GUAM AND THE
VIRGIN ISLANDS,

    Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT
OF ENERGY, and CHEVRON U.S.A.,
INC.

    Defendants-Appellees.

No. 99-3102

ORDER
Filed March 6, 2000

2

Before **EBEL**, **HOLLOWAY**, and **KELLY**, Circuit Judges.

---

These matters are before the court on appellants' petition for rehearing with suggestion for rehearing en banc. Upon review, the panel has determined rehearing is not warranted. Consequently, the petition is denied. We have decided, however, that amendment of our original Order and Judgment, filed on November 5, 1999, is appropriate to clarify certain issues. We have also determined publication is warranted. Accordingly, an amended published opinion is attached to this order.

The mandate issued on November 5, 1999 is recalled and reissued forthwith in accord with our amended disposition. A copy of the rehearing petition was circulated to all the active members of the court. No judge having called for a poll, the en banc suggestion is denied.

Entered for the Court
PATRICK FISHER, Clerk

by:
Elisabeth A. Shumaker
Chief Deputy Clerk

3

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 6 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

IN RE: THE DEPARTMENT OF
ENERGY STRIPPER WELL
LITIGATION.

---

THE STATES OF ALABAMA,
CALIFORNIA, CONNECTICUT,
IDAHO, INDIANA, MARYLAND,
MICHIGAN, MISSISSIPPI,
MONTANA, OHIO, SOUTH
DAKOTA, VERMONT, WISCONSIN
and WYOMING,

    Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT
OF ENERGY and CHEVRON U.S.A.
INC.,

    Defendants-Appellees.

No. 99-3065

---

THE STATES OF ALABAMA,
CALIFORNIA, CONNECTICUT,
IDAHO, INDIANA, MARYLAND,
MICHIGAN, MISSISSIPPI,
MONTANA, OHIO, SOUTH
DAKOTA, VERMONT, WISCONSIN
and WYOMING,

    Plaintiffs - Appellants,

No. 99-3066

v.

UNITED STATES DEPARTMENT OF ENERGY, Hazel O'Leary, Secretary; OFFICE OF HEARINGS AND APPEALS, Department of Energy, George B. Breznay, Director,

     Defendants - Appellees,

and

CHEVRON, USA, INC.,

     Intervenor-Defendant-Appellee.

DELAWARE, HAWAII, ILLINOIS, KANSAS, NEBRASKA, NEVADA, NORTH CAROLINA, RHODE ISLAND and WEST VIRGINIA, THE TERRITORY OF GUAM AND THE VIRGIN ISLANDS,

     Plaintiffs-Appellants,

v.

UNITED STATES DEPARTMENT OF ENERGY, and CHEVRON U.S.A., INC.

     Defendants-Appellees.

No. 99-3102

**Appeal from the United States District Court
for the District of Kansas
(D.C. Nos. 79-CV-378, 96-CV-1180-MLB, and
97-CV-378)**

**Submitted on the briefs:**[*]

Bill Lockyer, Attorney General, and Yeoryios Apallas, Deputy Attorney General, San Francisco, California, for Plaintiff-Appellant State of California.

James F. Flug and Paula Dinerstein, Duncan, Weinberg, Genzer & Pembroke, P.C., Washington, D.C., for Plaintiffs-Appellants States of Alabama, Connecticut, Idaho, Indiana, Maryland, Michigan, Mississippi, Montana, Ohio, South Dakota, Vermont, Wisconsin and Wyoming.

Stephen C. Skubel and Paul T. Michael, United States Department of Energy, Washington, D.C., for Defendant-Appellee United States Department of Energy.

Robert M. Westberg, Pillsbury, Madison & Sutro LLP, San Francisco, California, for Defendant-Appellee and Intervenor-Defendant-Appellee Chevron U.S.A. Inc.

Bernard Nash and Andrew P. Miller, Dickstein, Shapiro, Morin & Oshinsky LLP, Washington, D.C., for Plaintiffs-Appellants States of Delaware, Hawaii, Illinois, Kansas, Nebraska, Nevada, North Carolina, Rhode Island and West Virginia, the Territory of Guam and the Virgin Islands.

---

Before **EBEL, HOLLOWAY** and **KELLY,** Circuit Judges.

---

**EBEL**, Circuit Judge.

---

Plaintiffs-Appellants challenged a decision by the Department of Energy; the District of Kansas denied their claims, and they now seek review in this court. Defendants-Appellees have moved this court to dismiss these appeals for lack of

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The cause therefore is ordered submitted without oral argument.

appellate jurisdiction, and Appellants have opposed these motions. We find that the Federal Circuit has exclusive jurisdiction over these claims pursuant to 28 U.S.C. § 1295(a)(11)-(12), and Appellees' motions to dismiss cases 99-3065, 99-3102, and 99-3066 are therefore GRANTED.

## BACKGROUND

Plaintiffs-Appellants in cases 99-3065 and 99-3066 are the states of Alabama, California, Connecticut, Idaho, Indiana, Maryland, Michigan, Mississippi, Montana, Ohio, South Dakota, Vermont, Wisconsin, and Wyoming (the "States"). Plaintiffs-Appellants in case 99-3102 are the states of Delaware, Hawaii, Illinois, Kansas, Nebraska, Nevada, North Carolina, Rhode Island, and West Virginia, as well as the territories of Guam and the Virgin Islands (the "Jurisdictions;" the States and the Jurisdictions are collectively referred to as "Appellants"). Appellants sued Defendants-Appellees United States Department of Energy ("DOE") and Chevron U.S.A. Inc. ("Chevron;" DOE and Chevron are collectively referred to as "Appellees") in connection with a settlement agreement purporting to resolve the Stripper Well Litigation.[1] That litigation concerned the

---

[1] The present controversy between Appellants and Appellees took the form of three separate lawsuits. First, the States filed a motion to enforce the agreement in the District of Kansas, which was responsible for approving and overseeing the agreement under its Multi-District Litigation 378 ("MDL 378")

(continued...)

- 4 -

proper disbursement of over $1 billion in overcharge funds collected by DOE pursuant to crude oil price controls imposed under the Economic Stabilization Act of 1970 ("ESA") and the Emergency Petroleum Allocation Act of 1973 ("EPAA"). In 1986, a multitude of interested parties, including the States and the Jurisdictions, entered into the Final Settlement Agreement ("FSA"), which apportioned these and subsequently recovered funds among DOE (40%), the fifty states and several territories (40%), and reserved the remainder to settle individual claims (primarily those of utilities and oil refineries). The FSA was approved by Judge Theis of the District of Kansas, pursuant to that court's MDL 378 jurisdiction. Although intended to end this controversy, the FSA has itself been the subject of extended litigation.

At the center of the present case is a decision by the Department of Energy not to seek from Chevron some $500 million, which Appellants maintain should then be disbursed under the FSA. In 1992, DOE's Economic Regulatory

---

[1](...continued)
docket. That is now case No. 99-3065 before this court. Second, the States filed an original complaint in the same district court, docket No. 96-CV-1180, which is now case No. 99-3066 before this court. Third, the Jurisdictions filed a separate motion to enforce the agreement under the MDL 378 docket, advancing a different theory than the States. That is now case No. 99-3102 before this court. All of these cases concern the same disputed DOE decision. We consolidated cases 99-3065 and 99-3102, and companioned 99-3066 for oral argument. This opinion addresses the Appellees' Motions to Dismiss for Lack of Appellate Jurisdiction filed in each case.

Administration ("ERA") issued a Proposed Remedial Order ("PRO") alleging that Chevron had improperly represented its status under the now-defunct Tertiary Incentive Program ("TIP"),[2] and that it therefore must disgorge $124,989,588 it had received under the program (with interest, the sum exceeds $500 million). Chevron challenged the PRO and the matter was referred to DOE's Office of Hearings and Appeals ("OHA").

The OHA declined to enforce the PRO as a final Remedial Order, finding that "the ERA has failed to establish[] that Chevron was in fact unjustly enriched by its participation in the TIP as alleged in the PRO." (OHA Decision at 12-13.) As a result, none of the Appellants received additional disbursements under the FSA. After the OHA issued its decision in 1996, a group of private parties, who stood to recover additional funds as individual claimants under the FSA, directly challenged the ruling in the District of Columbia District Court. That claim,

---

[2] The TIP was a DOE program designed to increase domestic oil production and thus reduce the country's dependence on foreign oil. Under TIP, companies that extracted oil using more difficult and costly "tertiary" methods were allowed to sell that oil at full market value, instead of at the government-imposed price, in order to recoup the additional expense. Because some refiners had greater access to price-controlled oil than others (who were forced to pay full market value), DOE also implemented the Entitlements Program, which required that refiners with such greater access purchase "entitlements" from other refiners. The price of the entitlements corresponded with the difference between the market and controlled prices, the goal being to avoid penalizing refiners buying TIP oil at full price. DOE issued an annual Entitlements Notice, detailing which refiners were over or under their allotted entitlements and requiring settlement of these accounts.

however, was rejected by the Federal Circuit. See Consolidated Edison v. O'Leary, 131 F.3d 1475 (Fed. Cir. 1997) (dismissing plaintiffs' claim because the OHA's decision was not reviewable); cf. Consolidated Edison v. O'Leary, 117 F.3d 538 (Fed. Cir. 1997) (dismissing claims for lack of a private right of action and because the OHA's decision was not justiciable).

In 1996, the States and Jurisdictions brought the present actions in the District of Kansas, challenging the same OHA decision. That court, however, dismissed all three suits. In its order denying both the States' and the Jurisdictions' motions to enforce the FSA (Nos. 99-3065 & 99-3102 before this court), the district court identified several reasons why these actions were improper. First addressing the States' claims, it cited the Federal Circuit's recent decisions regarding this controversy and found that "OHA's dismissal of the proposed remedial order against Chevron was a part of DOE's prosecutorial function and as such, was unreviewable." (Id. at 13.)

Discussing the Jurisdictions' claims, the court engaged in an analysis of the FSA. The Jurisdictions alleged that Chevron "'fraudulently misled' the court and the parties [to the FSA] by misrepresenting its status as an entitlements seller under the draft 1981 Entitlements Notice [upon which the FSA distributions were based.]" (Id. at 4.) Specifically, the Jurisdictions argued that when Chevron claimed certain tax credits after DOE discontinued the Entitlements Program, it

automatically decertified itself as an entitlements seller under the TIP. (See id.) The court responded, however, that "[t]he jurisdictions assume that, in 1983, Chevron had to elect between a windfall profit tax refund and remaining on the entitlements list. There is nothing in the FSA requiring such an election." (Id. at 15.) The court further found that "tax matters were excepted from the settlement by Proviso (E) to the Refiners Release," and that "the FSA imposed no obligation on Chevron as a settling refiner to disclose its pending windfall profit tax refund claim." (Id. at 16.) Thus, its denial of the Jurisdictions' motion required a close inquiry into the terms of the FSA.

That same day, the district court issued a separate order dismissing the States' original complaint (No. 99-3066 before this court). The court specifically incorporated its findings in the MDL order, and dismissed the States' FSA claims on those grounds. (See Order of Dismissal at 2.) The States had also challenged DOE's interpretation of the TIP regulations, DOE's legal authority to issue or amend its regulations, and DOE's compliance with the Administrative Procedure Act and the Department of Energy Organization Act. The court dismissed these claims for lack of standing or, alternatively, for lack of proper venue. (See id. at 1-4.)

The States and Jurisdictions now seek review in this court. Appellees DOE and Chevron filed motions to dismiss for lack of appellate jurisdiction in each

- 8 -

case, alleging that exclusive appellate jurisdiction over these claims lies with the Federal Circuit. For the reasons stated below, we agree.

**DISCUSSION**

A. Federal Circuit Jurisdiction

28 U.S.C. § 1295(a) provides that "[t]he United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction . . . (11) of an appeal under section 211 of the Economic Stabilization Act of 1970; (12) of an appeal under section 5 of the Emergency Petroleum Allocation Act of 1973." Among the relevant provisions of the ESA and the EPAA were the crude oil price controls, which formed the basis for the controversy resolved by the FSA. The Federal Circuit succeeded to this jurisdiction upon abolition of the Temporary Emergency Court of Appeals ("TECA") in 1993. See Pub. L. 102-572 § 102(d), (e) (1992). Thus, this court cannot exercise jurisdiction over appeals "under" these statutes.

B. Tenth Circuit Authority

The Tenth Circuit has carefully avoided encroaching on the exclusive jurisdiction of the Federal Circuit and its predecessor, TECA. In Mobil Oil Corp. v. United States Dep't of Energy, 983 F.2d 172 (10th Cir. 1992), this court found that a dispute over moneys claimed by DOE in restitution proceedings against an

oil company involved issues arising under the ESA and EPAA and required interpretation of the ESA and EPAA, and was therefore subject to TECA's exclusive jurisdiction. See id. at 175-76. The court found that the issue of liability for restitution was "intertwined with the ESA and EPAA," and therefore could not properly be removed from TECA's domain. Id. at 176. The court also noted that "[a]nother Tenth Circuit decision recognizes TECA's jurisdiction when interpretation of price ceilings regulations imposed by the ESA and EPAA cause a contract dispute between the parties." Id. (citing Mountain Fuel Supply Co. v. Johnson, 586 F.2d 1375 (10th Cir. 1978), cert. denied, 441 U.S. 952 (1979)). The Tenth Circuit has never exercised jurisdiction over a disputed issue arising under the FSA.

Appellants argue that our decision in In re Seneca Oil, 906 F.2d 1445 (10th Cir. 1990), points in favor of jurisdiction over the present case. This argument is incorrect. In Seneca Oil, the court held that where ESA/EPAA issues are merely a backdrop to an independent claim, jurisdiction may obtain. "This appeal," the court wrote, "is not from an action to enforce DOE regulations or to obtain an order of restitution; rather it is from a decision regarding the priority of the restitution claim in bankruptcy." Id. at 1454. Moreover, the court was careful to note that TECA's exclusive jurisdiction with respect to the ESA and EPAA is not to be narrowly construed: "Thus, the phrase 'arising under' is interpreted more

- 10 -

_expansively_ for purposes of TECA's jurisdiction than it is for purposes of the federal question jurisdiction of the district courts. For example, unlike federal question jurisdiction, the TECA's jurisdiction can be created by defenses that raise ESA/EPAA issues." Id. at 1454 n.1 (emphasis added). In sum, only where these statutes and their regulations are mere background will this court exercise jurisdiction.

The question remains, therefore, whether appeals relating to the FSA arise under the ESA and EPAA, or whether those statutes merely provide a backdrop for independent claims. In the absence of Tenth Circuit precedent speaking directly to this issue, we find it useful to seek guidance from the Federal Circuit's extensive dealings with the FSA. As a preliminary matter, we note that the Federal Circuit expressly held "that the TECA precedent and practice on jurisdictional matters shall continue to apply to cases that reach the Federal Circuit by virtue of succession to the TECA." Texas American Oil Corp. v. United States Department of Energy, 44 F.3d 1557, 1564 (Fed. Cir. 1995). Accordingly, we look to both Federal Circuit and TECA authority in making this inquiry.

Such a review reveals that appellate jurisdiction over FSA disputes is exclusively vested in the Federal Circuit. In In re Dep't of Energy Stripper Well Exemption Litigation, 864 F.2d 796 (Temp. Emer. Ct. App. 1988), the court held that "the case before the district court of Kansas, No. 10-76 [MDL 378 Stripper

Well Litigation] seeking interpretation of the Final Settlement Agreement to resolve a dispute between two signatories to that Agreement, [is] a cause of action arising out of federal law, specifically out of the laws and regulations concerning the Economic Stabilization Act." Id. at 799. Given the plain logic of this conclusion, as well as the experience and expertise of the Federal Circuit in interpreting the FSA, we hold that if a controversy presents an issue of interpretation of the FSA, 28 U.S.C. § 1295(a)(11) grants exclusive appellate jurisdiction to the Federal Circuit.

We also note that the exclusive jurisdiction of the Federal Circuit obtains where a party raises an ESA/EPAA issue as a defense. See In re Seneca Oil, 906 F.2d at 1454 n.11 ("[T]he TECA's jurisdiction can be created by defenses that raise ESA/EPAA issues."); Texas American Oil Corp. v. United States Dep't of Energy, 44 F.3d 1557, 1563 (Fed Cir. 1995) ("The TECA has exercised jurisdiction of any EPAA/ESA issue whether presented by complaint, as a defense, or as a counterclaim.); Phoenix Petroleum Co. v. United States Fed'l Energy Regulatory Comm'n 95 F.3d 1555, 1563 (Fed. Cir. 1996). It follows from the above discussion that where a party raises the FSA as a defense, the claim "arises under" the ESA and EPAA and therefore vests exclusive jurisdiction in the Federal Circuit.

C. Nature of the Present Case

(1) The Jurisdictions' MDL 378 Case (No. 99-3102)

In their opposition to Appellees' motion to dismiss, the Jurisdictions admit that "[t]he Jurisdictions' claims are all based on enforcing the FSA." (Jurisdictions' Opposition at 3.)  As we have previously stated, claims under the FSA are within the exclusive jurisdiction of the Federal Circuit and thus cannot be considered by this court.  The Jurisdictions cite several TECA and Federal Circuit cases for the proposition that FSA claims do not arise under the ESA or EPAA. (See Jurisdictions' Opposition at 3-4.)  None of these cases, however, directly addresses this point; moreover, the Jurisdictions fail to discuss TECA's 1988 In re Stripper Well case explicitly finding that FSA claims do indeed arise under those statutes.  Thus, because the Jurisdictions' claims are based on the FSA, the Federal Circuit has exclusive jurisdiction.

(2) The States' MDL 378 Case (No. 99-3065)

In their brief, the States have carefully phrased the issues presented to this court to avoid any mention of the FSA.  They ask this court: "Did the lower court err in ruling that the 1977 Department of Energy Organization Act ("DOEOA") requires the challenged order of the Department of Energy's Office of Hearings and Appeals to be deemed an unreviewable act of prosecutorial discretion?"

(States' 99-3065 Br. at 3.) Moreover, they urge that in evaluating jurisdiction we must "'look at the nature of the issue presented to us and not to the nature of the case or controversy presented below.'" (States' 99-3065 Opposition at 2 (quoting MGPC, Inc. v. DOE, 673 F.2d 1277, 1281 (Temp. Emer. Ct. App. 1982).) The issues before this court, they argue, "are discrete and severable from any ESA/EPAA issues raised by the underlying claims or in the lower court's decision." (Id. at 3-4.) A careful review of the case, however, reveals otherwise.

Under the case or controversy requirement of Article III, courts decide cases in the context of a particular dispute and not in a legal vacuum. Thus, notwithstanding the States' careful semantics, we understand the primary question presented in this appeal to be: "Did the district court err in determining that the OHA's decision that Chevron did not receive excess tertiary incentive revenue and therefore need not make restitution to the Stripper Well escrow fund was unreviewable?"

The district court listed a variety of grounds for dismissing the States' claims, including that the OHA's decision not to enforce the PRO was an unreviewable act of prosecutorial discretion. Under Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998), however, the district court need only have announced that it lacked jurisdiction over the matter and dismissed the case. Steel rejected the use of so-called "hypothetical jurisdiction" to reach the merits of

a case, and a jurisdictional dismissal is all that is necessary to the holding. As such, we must consider the remainder of the district court's decision dicta. See also Gold v. Local 7 United Food and Commercial Workers Union, 159 F.3d 1307, 1310 (10th Cir. 1998) (noting Steel requires that jurisdictional issues must be resolved first).

Nevertheless, determining whether the OHA's decision in this case is properly reviewable would require this court to consider issues arising both under the ESA and EPAA directly and under the FSA. The district court based its ruling that the decision was not reviewable on Consolidated Edison Co. v. O'Leary, 131 F.3d 1475 (Fed. Cir. 1997), and the States ask us to reject this authority. (See States' 99-3065 Br. at 27-29.) However, even a brief glance at that case reveals that the Federal Circuit relied heavily on interpretation of ESA/EPAA issues to reach its result. See O'Leary, 131 F.3d at 1478 ("Four statutes are pertinent to this issue: sections 209, 210, and 211 of the ESA, which were incorporated into the EPAA, and section 503 of the Department of Energy Organization Act (DOEOA)."). The States would have us focus only on whether the DOEOA precludes review of the OHA's decision, but it is clear that the case relied upon by the district court to dismiss the States' claims directly involved the ESA and EPAA. As such, this claim clearly arises under those statutes.

Moreover, we would have to determine what effect paragraph IV.A.2 of the FSA should have on our characterization of the OHA's decision. That paragraph reads:

> Future DOE Actions: With the sole exception set forth in II.A.4, nothing in this Agreement shall be read or construed to limit or render reviewable the exercise of DOE's prosecutorial discretion in determining the appropriate action to take, if any, with regard to any enforcement matter. Further, nothing in this Agreement shall be read or construed to impose any obligation or duty upon the DOE regarding the enforcement or non-enforcement of its regulations, and it remains solely in the DOE's discretion to determine whether an enforcement proceeding should be initiated, settled, pursued on particular terms or terminated.

We are at a loss to see how the issue presented to this court could be decided without reference to this highly probative provision of the agreement underlying this dispute. (See also FSA ¶ VI.B ("[The FSA] shall not create any right of action against DOE concerning the initiation, continuation or conduct of any litigation.").)

Furthermore, Appellee Chevron relies in part on the FSA to support its assertion that the district court's decision not to review the OHA's action was correct. (See Aple. Chevron 99-3065/99-3012 Br. at 35.) It is clear that raising an ESA/EPAA issue (which the FSA clearly is) in a defense is sufficient to invoke the Federal Circuit's exclusive jurisdiction.

This court declines to participate in the fiction that this dispute does not turn squarely on the ESA, the EPAA, and the FSA. In order to grant the relief sought

by the States, we would have to conduct inquiries specifically committed to the expertise of the Federal Circuit. Specifically, we would have to reject a Federal Circuit decision explicitly resting on those statutes, interpret and distinguish a paragraph of the FSA directly on point, and consider a defense implicating the FSA.[3]

The States also contend that the district court erroneously excluded certain arguments advanced in the States' reply brief before that court and that the district court "should have considered all of the States' claims together in the MDL 378 docket." While these claims do not directly turn on an interpretation or application of the FSA, the Federal Circuit nevertheless has exclusive jurisdiction to resolve them. In Phoenix Petroleum Co. v. United States Fed'l Energy Regulatory Comm'n, 95 F.3d 1555 (Fed. Cir. 1996), the Federal Circuit explained that

> TECA's exclusive jurisdiction extended to issues that did not themselves arise under the EPAA when "a meaningful ruling requires consideration of the issues as a whole, the construction of the EPAA will control the litigation, the issues are so commingled as to render separate treatment impractical, or the non-EPAA issues are subsidiary, preliminary or threshold to an EPAA issue."

---

[3]The States also alleged that "the court's conclusion that OHA was exercising unreviewable prosecutorial discretion (a) precluded it from addressing the merits and (b) fatally infected its review of the merits." Because we have found that this court lacks jurisdiction to review the district court's primary determination, we likewise cannot consider these subsidiary claims.

- 17 -

Id. at 1563 (quoting Pennzoil Exploration & Prod. Co. v. Lujan, 928 F.2d 1139, 1141 (Temp. Emer. Ct. App. 1991). We hold that the same is true when issues not otherwise relating to the FSA are so inextricably linked and subsidiary to the FSA claim that it would be both impractical and wasteful to consider those claims separately.

In the present case, whether the district court properly excluded some of the States' arguments and whether the district court properly refused to consider certain claims under its MDL 378 docket are surely subsidiary to the States' primary FSA claims. As we have explained at length above, it is clear that these appeals are fundamentally based on the FSA, and it would merely waste the courts' and the litigants' resources to remove these secondary issues from their proper context. Indeed, the States rightly acknowledge that the "central issue" is their claim that the district court should have reviewed the OHA decision. Furthermore, we note that because the additional claims the States sought to raise were themselves based on the FSA, whether the district court properly excluded these claims is merely a threshold inquiry to an FSA claim. Thus, it appears that the States' claims that do not on their face implicate the FSA in fact are so secondary in relevance and importance to their FSA companions that they must fall within the Federal Circuit's exclusive jurisdiction.

<u>(3) The States' Original Complaint (No. 99-3066)</u>

On the same day the district court dismissed the States' and Jurisdictions' motions to enforce the FSA, it issued a separate order dismissing the States' concurrent original complaint. In that order, the district court held that the States' allegation that DOE had violated the FSA failed to state a claim upon which relief could be granted. The court then dismissed the remainder of the States' claims for lack of standing, or, alternatively, for lack of proper venue. (<u>See</u> Order of Dismissal at 2.) The States have appealed these dismissals to this court.

In dismissing the States' FSA claim, the district court explicitly adopted the reasoning of its order dismissing the MDL 378 claims. (<u>See</u> Order of Dismissal at 2.) For the same reasons we cannot review the MDL 378 decisions, this court does not have jurisdiction to review the States' claim that the district court erroneously adopted the MDL 378 rulings.

The same result obtains with regard to the district court's dismissals for lack of standing. In its brief, Appellee DOE argues that the States do indeed lack standing under ESA:

> The standing issue centers on an interpretation of ESA sections 209-11 and the bases on which Congress authorized public and private actions to enforce the ESA, the EPAA or regulations issued thereunder. An unbroken line of controlling decisions stand [sic] for the proposition that private parties, such as the States, lack standing to seek judicial review of a DOE enforcement decision made under the purview of the ESA, the EPAA or regulations issued thereunder.

- 19 -

As noted above, this court has held that "the TECA's jurisdiction can be created by defenses that raise ESA/EPAA issues." In re Seneca Oil, 906 F.2d at 1454 n.11. Consideration of Appellees' counter arguments on appeal would require this court to interpret statutes that are plainly within the exclusive jurisdiction of the Federal Circuit. Allowing this appeal to proceed would inevitably thwart either the will of Congress in granting exclusive jurisdiction to the Federal Circuit or the Appellees' right to have their defenses heard by the appropriate authority. Thus, Appellants' claims may not be presented to this court.[4]

D. Transfer

28 U.S.C. § 1631 states:

Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

---

[4]Because we find that the district court's dismissal for lack of standing cannot be reviewed in this court, it is unnecessary to determine whether the court's alternative rationale (lack of venue) was correct.

The plain language of this provision indicates we are required to consider whether transferring these cases to the Federal Circuit would be "in the interest of justice."

We note that the States and the Jurisdictions have previously commenced proceedings in these cases before the Federal Circuit. After filing "protective" notices of appeal in that court, Appellants sought but were denied a stay of those proceedings pending our disposition. Appellants then sought to voluntarily withdraw those appeals, but the Federal Circuit ruled that failure to proceed would result in dismissal with prejudice. The Jurisdictions chose to continue in that court, while the States accepted a dismissal with prejudice. In the order directing the States to proceed with the appeals or face dismissal, the Federal Circuit anticipated that the States might request that this court transfer the actions back to the Federal Circuit:

> In light of these circumstances, any dismissal entered in appeal nos. 99-1328 and 99-1356 will be with prejudice. As Chev[r]on and DOE point out, if a dismissal is entered without prejudice, [the States] could, in the event of an adverse ruling by the 10th Circuit, seek to resurrect [their] appeal here by way of transfer. That would be an impermissible result, given our prior rulings and the fact that appeal no. 99-1327 [(the Jurisdictions' appeal)] is proceeding in this court.

In light of this unequivocal declaration by the Federal Circuit that it intended to finally dispose of the States' appeals, and in light of the States' ample opportunity to pursue these cases in the proper forum, we cannot say that justice would be

served by transfer to the Federal Circuit. Accordingly, the States' motion is denied.[5]

## CONCLUSION

For the above reasons, we find that all of Appellants' claims raised in these three cases are within the Federal Circuit's exclusive jurisdiction pursuant to 28 U.S.C. § 1295(a). Accordingly, Appellees' motions to dismiss these appeals for lack of appellate jurisdiction are hereby GRANTED, and the States' motions for rehearing and transfer are DENIED.

---

[5] The DOE's motion to file its responsive brief on the transfer issue out of time is granted.